2023 PA Super 125

| | | |
|---|---|---|
| IN RE: ESTATE OF DONALD THOMAS SCHAEFER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: DONNA S. GARTNER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1342 WDA 2022 |

Appeal from the Order Entered November 15, 2022
In the Court of Common Pleas of Allegheny County
Orphans' Court at No. 02-19-01431

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.*

OPINION BY MURRAY, J.:                    **FILED: July 19, 2023**

Donna S. Gartner (Appellant), as executrix of the estate of Donald Thomas Schaefer (Decedent), appeals from the order dissolving a preliminary injunction and directing distribution of Decedent's Merrill Lynch individual retirement account (IRA) to his second wife, Florence Schaefer (Florence). Upon review, we vacate and remand with instructions.

We take the underlying facts and procedural history from this Court's prior opinion:

> By way of background, in August 2018, Florence and [Decedent], both octogenarians, entered into a premarital agreement [the agreement] drafted by their shared attorney, Jennifer Lynch Jackson, Esq. [Jackson]. …
>
> The record reflects multiple contradictions and ambiguities between Jackson and Florence's remembrance of events. Largely gleaned through Jackson's statements, at Florence and [Decedent's] request, they met with Jackson for the specific

---

* Retired Senior Judge assigned to the Superior Court.

purpose of obtaining that premarital agreement.[2]  During their several-hour meeting, Florence and [Decedent] indicated that they, among themselves, **had materially disclosed the financial contents of their estates and sought to protect those assets from passing, in death, to the other potential spouse.**[3]  Their desire to proceed having full cognition of each other's assets[4] was communicated and emphasized to Jackson at several points throughout the meeting, which was conducted entirely in person.  There would be no detailed accounting or discussion of [Decedent's] assets or liabilities during this meeting.

> [2] They would also present to Jackson a document addressing religious issues between the couple.  As an addendum, they wanted it notarized and appended to the premarital agreement.  **In addition, they requested that Jackson prepare wills for them, which would further state that there was to be no cross inheritance.  Instead, their estates were to pass to their respective children and/or heirs.**

> [3] Jackson would later testify that Florence expressly disclaimed wanting an asset and liability sheet attached to the premarital agreement.  When it was her opportunity to do so, Florence refuted Jackson's statement.

> [4] However, Florence's recollection of her preexisting knowledge at the meeting was that she had not been apprised of [Decedent's] individual retirement accounts and stock holdings.

In addition to general monetary discussions, Florence and [Decedent] stressed that, should [Decedent] precede Florence in death, Florence was permitted to stay at his residence in the form of a life estate.  This point would later become incorporated into [Decedent's] will.

After Jackson obtained the necessary information from Florence and [Decedent], she explained the agreement to them, line by line.  When Jackson concluded, she specifically advised Florence and [Decedent] that they should take the unsigned agreement home and have it reviewed by an independent attorney of their choosing.  Florence and [Decedent] rejected this advice

and correspondingly entered into the at-issue premarital agreement.

Florence and [Decedent] married in the month after consummation of their agreement. Approximately five months into their marriage, [Decedent] died.

Following [Decedent's] death, his will was probated. Thereafter, Florence filed a declaratory judgment action, asserting the agreement to be void because of Jackson's professional negligence that surrounded the construction of the agreement. Specifically, Florence identified that Jackson did not properly explain the agreement to her, failed to draft the agreement correctly, and incorrectly executed the document. Moreover, Florence sought damages from Jackson due to, in her words, "malpractice." Simultaneously, Florence sought her elective share from [Decedent's] estate. [In 2019, Florence sought, and the orphans' court granted, a preliminary injunction prohibiting the sale or transfer of Decedent's IRA.]

Ultimately, after the denials of both Florence's motion for summary judgment and [Decedent's] estate's motion for judgment on the pleadings, the premarital agreement's validity, the subject of the case presently before this Court would be litigated in orphans' court, with Florence advancing several bases as to why the agreement is legally insufficient under Pennsylvania law. Following a hearing, the court, *inter alia*, found Jackson's recollection of events to be credible and determined the agreement to be valid.

**Estate of Schaefer**, 281 A.3d 1044 (Pa. Super. 2022) (unpublished memorandum at *1-2) (some footnotes omitted, others in original, emphasis added).

This Court affirmed the orphans' court. **Id.** We expressly rejected Florence's position that she did not receive the financial disclosures. **Id.** at *4-5. We observed: "The agreement clearly contemplates waiver of a right to the other party's estate." **Id.** at *5. Further, we stated:

- 3 -

As to whether Florence received the legally required financial disclosures from [Decedent], the [orphans'] court found Jackson to be credible when she unequivocally indicated that Florence and [Decedent] had materially discussed all of [Decedent's] assets in a way that was satisfactory for both signators to the premarital agreement and that Florence wanted no corresponding list of assets and debts prepared. …. [W]e find no abuse of discretion or error of law in the [orphans'] court's determination, given Jackson's clear testimony as to Florence's level of financial knowledge and Florence's then-desire to not delve into the specifics of [Decedent's] assets.

***Id. See also id.*** *6-7 (noting Florence failed to show she was not "fully cognizant of [Decedent's] assets," including the existence of Decedent's IRA, and concluding "there **is** evidence of record, both in the form of testimony and documentary, indicating that Florence knew of [Decedent's] assets." (emphasis in original)).

On September 19, 2022, Appellant filed a motion to dissolve the preliminary injunction, and requested that the orphans' court direct distribution of the IRA to Decedent's estate. Both parties submitted briefs. On November 15, 2022, the orphans' court filed a memorandum opinion and order dissolving the preliminary injunction, but directing distribution of the IRA to Florence as the surviving spouse. This timely appeal followed.[1]

Appellant raises a single issue for review:

 I. Did the orphans' court abuse its discretion when it granted [Appellant's] motion to dissolve preliminary injunction and direct distribution of Decedent's [IRA] but where it ordered that said IRA be distributed to [Florence] and not to

---

[1] The orphans' court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement and did not issue an additional opinion.

- 4 -

> [Appellant,] despite [Florence] waiving any interest in the IRA pursuant to [the agreement]?

Appellant's Brief at 4.

In finding Florence was entitled to the IRA, the trial court opined:

On October 11, 2022, [Appellant] filed a brief which included a single page of legal argument. It discussed one case. It's not the first time the Estate has extolled the virtues of the Ohio Supreme Court's decision in *Kinkle v. Kinkle*, 699 N.E.2d 41 (Ohio 1998). In addressing *Kinkle* before, [the orphans' c]ourt made the following observation:

> In *Kinkle*, the Ohio Supreme Court upheld an antenuptial agreement involving an IRA that was specifically listed as the decedent's property in an exhibit to the antenuptial agreement. The [agreement] involved here … does not identify assets. For that reason, the magnetic force of *Kinkle* evaporates.

Opinion, pg, 3 fin. 2 (Sept. 8, 2020). The passage of time and the Superior Court's affirmation of [the c]ourt's decision does nothing to change [the orphans' c]ourt's view of the *Kinkle* case. It just does not apply here. **There, the spouse was made aware of an IRA. Here, Florence had no knowledge about its existence.**

While the [the orphans' c]ourt has dispatched the sole legal theory from [Appellant] and could end on that note alone, [Florence's] legal team advances some reasons which are worthy of discussion because of the likelihood of the issue arising in future litigation. The overarching theme of the surviving spouse here is that while the premarital agreement was deemed valid and enforceable[,] it does not preclude giving effect to the language in the IRA agreement. The language of the pre-marital agreement, the language in the IRA custodial agreement and the influence of Sections 6108(a) and 2203 of Title 20 allows the surviving spouse to prevail in this case. That result is supported[] by some analogous case law. *See*[] *The Estate of Kenneth Sipos*, 47 Pa. D&C 5th 259 (CP; Phil, March 4, 2015). The *Sipos* decision references a state Supreme Court decision. *Alkhafaji v.* [*TIAA-CREF*] *Individual &Institutional Servs., LLC*, 69 A.3d

219, 223 (Pa. 2013). Despite that decision being an evenly decided *per curiam* result, the case stands for the proposition "that the beneficiaries of an insurance policy could not be changed by a will", Justice Saylor explained, "[t]o allow modification of non-testamentary contractual assets by testamentary documents blurs the timeless and very practical distinction between the two, notably set forth in 20 Pa. C. S. § 6108." 69 A.3d at 223. He reasoned that "[p]arties to a contract must have the ability to rely on the terms of their contract[] and should not have to speculate about testamentary clauses in documents of which they have no awareness." ***Id.***

Subsequent cases have also referenced ***Alkhafaji*** for recognition of an exception to the general rule. "[O]ur case law has recognized an exception where an insured makes reasonable but unsuccessful efforts to send notice. This exception will recognize a change in beneficiary designation, even though notice is received after the death of the annuitant, if the annuitant made every reasonable effort to comply with the notice requirements of the policy." ***N.Y. Life Insurance Co. v. Legault***, 15-CV-736 (E.D. Pa. Oct. 23, 2015), ***aff'd on appeal***, ***N.Y. Life Ins. Co. v. Legault***, 16-3259 (3rd Cir. March 2, 2017) (***citing***[] ***Alkhafaji*** and explaining that, under Pennsylvania law, a beneficiary change can be made either by strictly complying with policy terms or by making 'every-reasonable effort to comply with the notice requirements of the policy'); ***see also***[] ***Estate of Wilson by Killinger v. State Employees' Ret. Bd.***, 219 A.3d 1141 (Pa. 2019).

Orphans' Court Opinion, 11/15/22, at 3-5 (footnotes and record citations omitted, emphasis added).

In response, Appellant argues:

The validity of the [agreement] was decided by this Court] in favor of Appellant[.] … The [agreement] set forth that a full and complete disclosure of property and income has been made. …

[The Superior Court] affirmed the decision of the [orphans'] court that [Florence] waived any claim to [Decedent's] assets and [e]state by signing the [agreement].

> The [IRA] was part of [Decedent's] assets when he passed. In its [o]pinion, the [o]rphans' [c]ourt, without any evidence of record, states that [Florence] did not know about the IRA. This is inconsistent with [the Superior Court's] conclusion that the [agreement] was valid and [Florence] was fully advised of the assets of [Decedent]. Furthermore, the language of the IRA specifies that the proceeds should go to Julie Schaefer [Julie], [Decedent's] first wife who preceded him in death. [Florence] was never a named beneficiary.

Appellant's Brief at 7-8.

Florence counters that the agreement "does not apply to the [IRA.]" Florence's Brief at 5. She maintains that "the waiver upon death provision" of the agreement does "not apply to all assets[] but is expressly limited to testamentary assets." *Id.* Florence repudiates the orphans' court's finding that she was unaware of the IRA's existence, stating, "the parties were clearly aware of the IRA" when drafting the agreement. *Id.* at 10. Florence reiterates that the trial court erred in finding she "had no knowledge of the IRA." *Id.* at 13. Florence "acknowledges that the trial court relied on this factual error to at least some degree" in making its decision. *Id.* at 14.

We begin by recognizing:

> The findings of a judge of the Orphans' Court Division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact [that] are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not

- 7 -

predicated upon capricious disbelief of competent and credible evidence.

*In re Estate of Cassidy*, --- A.3d ---, 2023 WL 3910447, at *3 (Pa. Super. Jun. 9, 2023) (citation omitted). "However, we are not constrained to give the same deference to any resulting legal conclusions. … This Court's standard of review of questions of law is *de novo*, and the scope of review is plenary, as we may review the entire record in making our determination." *In re Estate of Tscherneff*, 203 A.3d 1020, 1024 (Pa. Super. 2019) (citations omitted).

This case involves the interplay between the language of the agreement, the IRA, and Decedent's overall estate plan. Thus, we recognize:

Prenuptial agreements are contracts and should be interpreted using contract principles. *Raiken v. Mellon*, [ ] 582 A.2d 11, 13 ([Pa. Super.] 1990).

"When interpreting a prenuptial agreement, the court, as in dealing with an ordinary contract, must determine the intention of the parties. When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement." *Id.* "The court must construe a contract as written and may not modify the plain meaning of the contract under the guise of interpretation." *Tuthill v. Tuthill*, 763 A.2d 417, 420 (Pa. Super. 2000)[.] However, where an ambiguity exists, "the courts are free to construe the terms against the drafter and to consider extrinsic evidence in so doing." *Raiken*, 582 A.2d at 13. If a contract "is fairly susceptible of different constructions and capable of being understood in more than one sense[,]" it will be found to be ambiguous. *Tuthill*, 763 A.2d at 420. "It is the function of the court to decide, as a matter of law, whether the contract terms are clear or ambiguous. The fact that the parties have different interpretations of a contract does not render the contract ambiguous." *Id.* (citations omitted).

- 8 -

*In re Estate of Blumenthal*, 812 A.2d 1279, 1286 (Pa. Super. 2002).

Moreover:

> The testator's intent is the polestar in the construction of every will and that intent, if it is not unlawful, must prevail. … The words of a will are not to be viewed in a vacuum but rather as part of an overall testamentary plan.

*In re Estate of Davis*, 128 A.3d 819, 821 (Pa. Super. 2015) (citation omitted).

With these principles in mind, we address Appellant's issue. This Court previously determined that Florence and Decedent entered into a valid prenuptial agreement. *Schaefer*, 281 A.3d at *8. The relevant portions of the agreement provide:

> 1.01. The Parties to this Agreement intend to identify their separate property as of the date of marriage, and to clarify that **neither will obtain any interest in the specified separate property of the other as a result of the marriage <u>except as provided herein</u>**.
>
> ….
>
> 2.02. Each Party to this Agreement has given the other a full and complete disclosure of his or her property and income as of the date of this Agreement.
>
> ….
>
> 3.01. Each Party shall have the absolute and unrestricted right to manage, control, dispose of, or otherwise deal with his or her separate property free from any claim that may be made by the other Party **by reason of their marriage**, and with the same effect as if no marriage had been consummated between them. By this Agreement, **each Party waives, discharges, and releases all right, title, and interest in and to the separate property that the other Party now owns** or will own in the future. **Separate property is defined as any property**

- 9 -

> **bearing the individual party's name alone or property that is joint with person or persons other than the Prospective Spouse**.
>
> ….
>
> 5.01. Parties acknowledge that they have been advised that **by virtue of their marriage** each will have an interest in the other's estate or any intestacy. **It is the intention of parties that each party will waive any interest that he or she may have in the estate or any intestacy of the other.** Each party is free to transfer his or her separate property under a Will without claim from the other.

Agreement, 8/20/18, at 1-3 (emphasis added).

The parties agree that Decedent named Julie, who predeceased him, as the beneficiary of his IRA. *See* Appellant's Brief at 8; Florence's Brief at 2.[2]

The IRA contract provides:

> You can designate in writing a beneficiary to receive the balance of your IRA upon your death. **If you make no designation**, the balance will be distributed to your surviving spouse, if you are married. If you do not have a surviving spouse, the balance will be distributed to your estate.
>
> You can change your designation at any time by notifying us in writing. The change will not become effective until we receive notice and accept the change in beneficiary.

IRA, Traditional IRA Disclosure Statement, § 4, ¶¶ 19-20 (paragraph numbering omitted, emphasis added).

---

[2] Portions of copies of the IRA in the certified and reproduced records are of poor quality, such that we are unable to discern any beneficiary designation. As stated above, the parties do not dispute Decedent's designation of Julie as the IRA's sole beneficiary.

In its opinion, the orphans' court does not discuss the language of the agreement or IRA except to say: "The language of the [agreement], the language in the [IRA], and the influence of Sections 108(a)[3] and 2203[4] of Title 20 allows the surviving spouse to prevail in this case." Orphans' Court Opinion, 11/15/22, at 4 (footnotes added). This was error.

Our review reveals no support the orphans' court's determination in favor of Florence. The parties agree that Florence was not named as a beneficiary of the IRA, and Julie is the only named beneficiary. Appellant's Brief at 7-8; Florence's Brief at 2. Under the plain language of the IRA contract, the surviving spouse only becomes a beneficiary "[i]f you make no designation[.]" IRA, Traditional IRA Disclosure Statement, § 4, ¶ 19. The IRA is silent as to what occurs if the named beneficiary predeceases the owner, and the owner does not name a new beneficiary. As noted above, it is a long-settled principle of contract interpretation that this Court "construe a contract as written and may not modify the plain meaning of a contract under the guise of interpretation" **Tuthill**, 763 A.2d 420. **See Madison Const. Co. v. The Harleysville Mut. Ins. Co.**, 735 A.2d 100, 106 (Pa. 1999) ("We will not …

---

[3] Section 6108 provides that designation of beneficiaries of insurance or employee death benefits is not testamentary. 20 Pa.C.S.A. § 6108(a).

[4] Section 2203 concerns a spouse's elective share and provides: "Interests under any broad-based nondiscriminatory pension, profit sharing, stock bonus, deferred compensation, disability, death benefit or other such plan established by an employer for the benefit of its employees and their beneficiaries[,]" are subject to election. 20 Pa.C.S.A. § 2203(b)(3).

distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.") (quotation marks and quotation omitted).

Here, the plain and unambiguous language of the IRA contract provides for inheritance by a surviving spouse only if there is no named beneficiary. As Decedent named Julie as his beneficiary, Florence does not inherit. The orphans' court's determination is not supported by the plain language of the IRA. **See Tuthill**, **supra**; **Madison**, **supra**.

Moreover, Florence waived any interest in the IRA by signing the agreement. Florence argues that Article 5.01 of the agreement, titled "Waiver Interest in Estate," does not apply because the IRA does not pass by will or intestacy. **See** Florence's Brief at 7-10; **see also** 20 Pa.C.S.A. § 2203(a). While we agree that the IRA is not testamentary, the IRA is part Decedent's estate.

Black's Law Dictionary defines an "estate" as "[a]ll that a person or entity owns, including both real and personal property. [] The property one leaves after death; the collective assets and liabilities of a dead person." Black's Law Dictionary, 304 (5th Pocket ed. 1996). Pennsylvania considers an IRA part of a decedent's estate and subject to state inheritance tax. **In re Estate of Neiderhiser**, 850 A.2d 68, 71-72 (Pa. Cmwlth. 2004) (reversing orphans' court and finding decedent's IRA subject to Pennsylvania inheritance

tax).[5]  Here, Florence agreed she intended to "waive any interest [she] may have in the **estate** or any intestacy of the other."  Agreement, 8/20/18, at 3 (emphasis added).  As Decedent's IRA, while not testamentary, is part of the estate, Florence waived her interest in it.

Even if the IRA was not part of the estate, Florence further waived her interest to it in Articles 1.01 and 3.01 of the agreement.  Article 1.01 states that the parties will not "obtain any interest in the specified separate property of the other as a result of the marriage[.]"  Agreement, 8/20/18, at 1.  Article 3.01 provides:

> By this Agreement, each Party waives, discharges, and releases all rights, title, and interest in and to the separate property that the other Party now owns or will own in the future.  Separate property is defined as any property bearing the individual's party's name alone or property that is joint with person or persons other than the Prospective Spouse.

*Id.* at 2.  Decedent was the sole owner of the IRA when he and Florence married.  Under the agreement, the IRA was Decedent's "separate property" and Florence waived any interest in it.  *See id.* at 1-2.

The Ohio Supreme Court reached the same conclusion in *Kinkle*, *supra*.[6]  In *Kinkle*, the husband (decedent) opened an IRA in 1992 with

---

[5] While decisions of the Commonwealth Court are not binding, they may serve as persuasive authority.  *See  Estate of Brown*, 30 A.3d 1200, 1204 n.2 (Pa. Super. 2011).

[6] "The decisions of courts of other states are persuasive, but not binding, authority."  *Huber v. Etkin*, 58 A.3d 772, 780 n.8 (Pa. Super. 2012) (*en banc*).

- 13 -

Fidelity Investments Southwest Company (Fidelity). *Kinkle*, 699 N.E.2d, at 42. He did not designate a beneficiary. *Id.* In 1994, the decedent married, but prior to the marriage, he and his future wife signed an antenuptial agreement waiving all rights to the other's property. *Id.* The decedent died three months after getting married. *Id.* Following the decedent's death, the bank released the IRA to the wife, as the surviving spouse, pursuant to the IRA's clause stating if the decedent died without naming a beneficiary, the IRA went to the surviving spouse. *Id.* The decedent's children brought an action on behalf of decedent's estate to recover the IRA funds. *Id.* Both the trial court and the intermediate appellate court ruled in favor of the estate. *Id.*

On discretionary appeal, the Ohio Supreme Court explained its affirmance:

> [T]here are two contracts involved in this case. The first, the contract between Fidelity and [the decedent], was performed according to its terms. Since [the decedent] did not designate a specific beneficiary, the beneficiary became his wife through the language of the IRA contract. Fidelity performed under the contract. At that point, the second contract, the antenuptial agreement governed by Ohio law, came into play. The question is whether through an antenuptial agreement a spouse may waive her right to be a beneficiary under an IRA contract. We find that she may certainly do so.
>
> This court has long held that prenuptial agreements controlling the distribution of assets upon the death of a spouse are enforceable. … In Ohio, there is no public policy, statute or case law which prevents parties to antenuptial agreements from cutting one another off entirely from any participation in the estate of the other upon the death of either. [The a]ppellant … would have us simply ignore the existence of the antenuptial agreement as far as the IRA at issue is concerned. However, the contract that she entered into with [the decedent] determines her rights to

- 14 -

[his] property and estate, not the contract [the decedent] entered into with Fidelity.

….

[The appellant] expressly waived and released all rights and interests, including contingent interests, that she might acquire in [the decedent's] property or estate by virtue of her marriage to him. [The appellant's] interest in the IRA account was contingent on [the decedent's] death[] and arose only by virtue of her marriage to him—she was never listed specifically as a beneficiary under the IRA contract.

At the time [the decedent] entered into the contract, [the appellant] was not his wife. Only because she became a "surviving spouse," *i.e.*, by reason of her marriage to [the decedent], did [the appellant's] interest arise. [The appellant] waived any interest of that kind in the antenuptial agreement.

*Id.* at 43-44 (citations and internal quotation marks omitted).

The facts in **Kinkle** are align with the facts before us. Further, we are persuaded by the reasoning in **Kinkle**.[7] Here, Decedent obtained the IRA prior to marrying Florence. Decedent did not name Florence as a beneficiary

_____

[7] The orphans' court distinguished **Kinkle** on two bases: (1) Florence did not know about the IRA; and (2) the list of assets attached to the antenuptial agreement in **Kinkle** included the IRA, while there was no asset list attached to the antenuptial agreement between Decedent and Florence. Orphans' Court Opinion, at 3-4. As noted, the parties agree that Florence knew about the IRA prior to signing the agreement. Appellant's Brief at 7-8; Florence's Brief at 10. This Court affirmed the validity of the agreement, and specifically referenced the clause stating that the parties had informed each other of all "property and income." **Schaefer**, 281 A.3d at *4-5; **see also Hunnell as Trustee of Hunnell Family Revocable Living Trust v. Krawczewicz**, 284 A.3d 1192, 1202 (Pa. Super. 2022) (explaining law of the case doctrine). Further, we rejected Florence's claim that she had not received a full disclosure of Decedent's assets, noting that "Florence … wanted no corresponding list of assets and debts prepared." **Id.** at *5; **see also id.** at *7.

(unlike the decedent in **Kinkle**, Decedent named a beneficiary). Florence signed a prenuptial agreement waiving her right to Decedent's separate property and any part of his estate. As in **Kinkle**, we conclude Florence waived any interest in the IRA. **See id.** at 44.

We also conclude the orphans' court's reliance on the Pennsylvania Supreme Court's split decision in **Alkhafaji**,[8] and the Philadelphia Orphans' Court's decision in **Sipos**,[9] is misplaced. In **Alkhafaji**, as part of a divorce settlement, the decedent purchased annuities naming two children from his prior marriages as beneficiaries. **Alkhafaji**, 69 A.3d at 221. Years later, the decedent executed a new will naming his then-spouse and all of his children as beneficiaries of the annuities. **Id.** at 221-22, 226. The decedent did not notify the holder of the annuities, TIAA-CREF, of the change. **Id.** Our Supreme Court addressed whether a testator could change the beneficiaries of an annuity by will, and, if so, what type of notice the testator was required to give the plan holder. **See id.** at 220, 221-22, 224-25, 226.

In **Sipos**, the decedent designated his caretaker as beneficiary of his IRA. **Sipos**, 47 Pa. D.&C. 5th, at 260-61. Two years later, the decedent

---

[8] There are four opinions in **Alkhafaji**, none of which garnered a majority. One justice did not participate; two advocated for affirmance, and two advocated for reversal. **Alkhafaji**, 69 A.3d at 531.

[9] "[C]ourt of common pleas decisions provide, at most, persuasive but not binding authority." **Sears, Roebuck & Co. v. 69th St. Retail Mall, L.P.**, 126 A.3d 959, 972 (Pa. Super. 2015).

executed a will naming his brother as the IRA's beneficiary. *Id.* at 261. There was no evidence the decedent attempted to comply with the IRA's requirements for changing a beneficiary. *Id.* at 268. Following the decedent's death, the caretaker cashed the IRA. *Id.* at 263. The orphans' court found that under those circumstances, "the beneficiary of [the decedent's IRA] was not changed by his will as no reasonable effort by [the decedent] to comply with the terms of the policy was demonstrated." *Id.* at 269 (footnote omitted).

We see nothing compelling in *Alkhafaji* and *Sipos*. Both cases involve a conflict between beneficiaries: those named in accordance with the plans, and those named by will. By contrast, we are presented in the instant case with the issue of whether a surviving spouse, not named as a plan beneficiary, whose interest was acquired solely by marriage, contracted away her interest by executing a prenuptial agreement. As the Ohio Supreme Court explained, testamentary documents are different from prenuptial agreements:

> [The case relied upon by the appellant] concern[s] testamentary disposition, which involves a unilateral decision by the holder of the retirement fund to change the beneficiary in a separate document outside the IRA contract. However, there is no testamentary disposition at issue in this case. Here, the beneficiary herself denied any interest in the funds at issue. She did so pursuant to an antenuptial agreement of unquestioned validity, a contract evidencing a meeting of the minds of her and her soon-to-be husband.

*Kinkle*, 699 N.E.2d at 43.

Similarly, in this case, Decedent did not dispose of the IRA in a testamentary document, *see* Will, 8/20/18, at 1-3, and Florence signed a valid prenuptial agreement in which she waived her rights to the IRA. Thus, Florence is not entitled to distribution of the IRA.

Our holding honors Decedent's stated wishes. ***See Davis***, 128 A.3d at 821. We previously observed that the agreement "clearly contemplates waiver of a right to the other party's estate." ***Schaefer***, 281 A.3d at *5; ***see also id.*** at *1 n.2 (explaining that Decedent and Florence requested Jackson "prepare wills for them, which would further state there was to be no cross inheritance. Instead their estates were to pass to their respective children and/or heirs."). When Decedent executed the prenuptial agreement, he changed his will in accordance with the terms of the agreement. His will bequeathed to Florence a life interest in Decedent's home, but if she chose to vacate the property prior to her death, Decedent's "real estate shall be equally divided among my herein named children[.]" Will, 8/20/18, at 1. Also, there is no evidence Decedent attempted to change the beneficiary of his IRA. The record demonstrates Decedent's intent that Florence inherit a life interest in his home, and nothing more.

For the above reasons, we vacate the order of November 15, 2022, and remand for entry of an order dissolving the preliminary injunction and directing distribution of the IRA to the estate.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2023