J-A17035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: R.C.A., JR. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.C.A., JR. | : | No. 1850 EDA 2022 |

Appeal from the Decree Entered June 20, 2022
In the Court of Common Pleas of Delaware County
Orphans' Court at No(s):  0452-2021-O

BEFORE:   KING, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                **FILED NOVEMBER 28, 2023**

Appellant, R.C.A., Jr., appeals from the decree entered in the Delaware County Court of Common Pleas Orphans' Court, which granted the petition for payment of counsel fees filed by Appellee, J. Michael Considine, Jr.  We affirm.

The Orphans' Court opinion set forth the relevant facts and procedural history of this appeal as follows:

> On September 15, 2021, Douglas Oakford, Executor of the Estate of [M.A.] ("Decedent"), filed a petition to adjudicate [Appellant] incapacitated and to appoint a plenary guardian.[1]  [Appellant] is the son of Decedent.  Decedent passed away on September 9, 2020.  At the time of Decedent's death, she owned a residence located at 1608

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] "The court, upon petition and hearing and upon the presentation of clear and convincing evidence, may find a person domiciled in the Commonwealth to be incapacitated and appoint a guardian or guardians of his person or estate." 20 Pa.C.S.A. § 5511(a).

Winton Avenue in Havertown, PA 19038 ("the Property"). According to Decedent's will, her home was to be sold six months after her death and the proceeds were to go into a trust for Appellant's benefit. Mr. Oakford was also the trustee of the testamentary trust created for the benefit of Appellant.

During his entire life and after Decedent's death, Appellant resided in the Property. According to the guardianship petition, Appellant was refusing to leave the Property, refusing to grant access to anyone, including professional social workers, and refusing to cooperate in the process of selling the home and relocating. Appellant was also in a living situation that appeared to involve extreme hoarding over decades. [Appellee] was initially retained on April 13, 2021 by Appellant to represent him in the matter involving his mother's estate. The guardianship petition stated that [Appellee] was retained to establish a logical distribution of the inheritance and to relocate Appellant into a new financially sound home using the inheritance funds. [Appellee] attempted to work with Appellant, despite his refusal to cooperate, and in doing so, [Appellee] became concerned for his welfare and that he would be susceptible to financial exploitation. During his representation of Appellant, [Appellee] suggested that Appellant be examined by an expert to see if a guardian of his person and/or estate would be necessary. The guardianship petition was then filed by the executor of the estate on September 15, 2021, and a hearing on the petition was scheduled for October 25, 2021. In addition, a guardian *ad litem* ("GAL"), Ms. Jacquelyn Goffney, was appointed on behalf of Appellant on October 19, 2021. GAL Goffney and the executor's attorney have acknowledged that there was a need for Appellant to vacate the Property.

Attorney James Cunilio entered his appearance on October 20, 2021 for representation of Appellant in the guardianship matter and filed an answer to the guardianship petition on October 22, 2021. A continuance request of the October 25th court date was granted for the parties to have additional time in working out the matter and due to an alleged dispute over whether [Appellee] was in fact discharged from further representation of Appellant. Appellant signed a letter dated November 18, 2021 to be sent to [Appellee] to discharge

- 2 -

him from his duties, as Appellant's attorney. [Appellee] denied that he received said letter.[2] [Appellee] filed an answer to the guardianship petition on November 22, 2021, on the same date as the second hearing, and agreed to do no further work. At the hearing held on November 22, 2021, GAL Goffney confirmed that Appellant has selected who he wants to be his attorney and has released other counsel.

On April 26, 2022, [Appellee] filed a petition for counsel fees in the guardianship matter. Monthly invoices were included as exhibits to his petition for counsel fees in which he calculated his attorney's fees and costs to total $6,384.99.[3] A hearing was held on June 20, 2022 to address the petition for counsel fees. Upon review, the Orphans' Court properly concluded that the fees and costs incurred up until [Appellee] learned that he was discharged as Appellant's attorney were reasonable and the award of $6,202.03 was equitable.[4]

When [Appellee] was asked by the court why he believes he should be paid for legal fees pursuant to the retainer agreement, he stated the following:

I tried to represent this client's best interest. We did many things at his house to try to get him to cooperate with the will. He wouldn't do it. We brought in a social worker. There is over $200,000 [in an] account that he had a right to. He wanted me to do bills. He wanted me to do a lot of things. I did

---

[2] The record on appeal includes a copy of the letter, as well as an affidavit of service from Attorney Cunilio's legal assistant. In the affidavit, the legal assistant stated that she sent the letter to Appellee via first class mail and email. Nevertheless, we observe that Appellee's physical and email addresses set forth in the affidavit and letter do not match the addresses for Appellee on this Court's docket.

[3] On May 23, 2022, the executor of Decedent's estate withdrew the petition to adjudicate Appellant incapacitated and appoint a plenary guardian.

[4] As discussed *infra*, the court reduced the total amount of counsel fees to ensure that Appellee was compensated only for work done prior to his discharge.

all that.

The work that [Appellee] completed for Appellant is reported in his multiple invoices attached to the petition for counsel fees. At the June 20th hearing, [Appellee] testified that after the filing of the guardianship petition, [Appellee] wanted to have Appellant evaluated by an expert. Before this could be done, [Appellee] was discharged from representing Appellant, and he "did not do anything more in the case because [he] didn't want to run up the hours unnecessarily."

At the hearing, [Attorney] Cunilio alleged that most of the charges from [Appellee] were for the guardianship matter. While [Appellee] argued that the estate matter and the guardianship matter are one matter, [Attorney] Cunilio argued that they are two separate matters. [Appellee] offered the retainer agreement signed by Appellant on April 13, 2021 into evidence during the hearing held on June 20, 2022.[5] [Attorney] Cunilio claimed that Appellant only hired [Appellee] in the estate matter and not in the guardianship matter.

Appellant testified at the hearing held on June 20, 2022. Appellant moved out of the Winton Avenue Property and moved into his own apartment on or about May 13, 2022. Appellant testified that he originally retained [Appellee] to represent him regarding his mother's estate matter. Appellant wanted assistance in determining what the trust was and how much was supposed to go into it, as well as what his legal rights were. There were several insurance annuities that were going to be deposited into the trust, and Appellant sought out [Appellee] to retrieve copies of said annuities. Appellant testified that [Appellee] did not complete what he believed he had asked [Appellee] to complete. Appellant testified that he had this belief because [Appellee] was providing him with inaccurate amounts of money to be distributed to him and his siblings. Appellant testified that he had never authorized [Appellee] to represent him in the guardianship matter.

---

[5] The agreement specified that Appellant permitted "the trustee of [Decedent's] estate to pay the law firm out [of Appellant's] portion of the proceeds of the estate." (Exhibit P-1, submitted 6/20/22).

* * *

> On June 20, 2022, the court determined that [Appellee] is to be awarded for all of his work done in representing Appellant up until he learned that Appellant was discharging him as his attorney at the November 22, 2021 hearing. [Appellee] confirmed that $6,202.[03] was the total amount due up until November 22, 2021 when he filed his answer and agreed to do no more work for Appellant.

(Orphans' Court Opinion, filed 2/28/23, at 1-6) (internal record citations and some capitalization omitted).

Appellant timely filed a notice of appeal on July 14, 2022. On July 26, 2022, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on August 2, 2022.[6]

Appellant now raises six issues for this Court's review:

> Did Appellant … waive the 13 issues set forth in his concise statement of matters complain[ed] of on appeal when the trial court addressed each of these issues separately and noted that the other 32 paragraphs of the statement are mere statements which require no response?

> Notwithstanding the holding in **Hempstead v. Meadville Theological School**, [286 Pa. 493, 134 A. 103 (1926),] can an Orphans' Court award counsel fees when the attorney's services did not protect a common fund for distribution or administration of the court?

> Did the trial court have authority to award counsel fees pursuant to Pennsylvania Rule of Orphans' Court Rule 14.4 and Delaware County Orphans' Court Rule 14.2 when an

---

[6] On August 4, 2023, Appellee filed an application for leave to submit cases partially cited at oral argument. We now grant Appellee's application.

- 5 -

incapacitated person's estate was never created?

Did the trial court abuse its discretion by finding that [Appellee's] fees were reasonable?

Did the retainer agreement signed by [Appellant] for [Appellee's] services in [Decedent's] estate [case], five months before the guardianship petition was filed, satisfy the requirements of Pennsylvania Rule of Orphans' Court Rule 14.4?

Were the fees awarded to [Appellee] proper when [Appellee] never claimed he was retained by [Appellant] to represent him in the guardianship matter?

(Appellant's Brief at 5-6) (issues reordered for ease of disposition; some capitalization and quotation marks omitted).

In his first issue, Appellant complains about the court's conclusion that Appellant's prolix Rule 1925(b) statement did not preserve any issues for appellate review. Appellant insists that the "court was able to address the thirteen issues it recognized," and Appellant subsequently "narrowed the appeal issues from the thirteen identified in his Rule 1925(b) statement to six issues in his … brief." (*Id.* at 34). We agree with Appellant, as our review of the record does not reveal a basis to support waiver. *See Eiser v. Brown & Williamson Tobacco Corp.*, 595 Pa. 366, 383, 938 A.2d 417, 427-28 (2007) (encouraging lower courts to recognize that on rare occasions party may, in good faith, believe that large number of issues are worthy of pursuing on appeal; explaining that number of issues raised in Rule 1925 (b) statement does not, without more, provide basis upon which to deny appellate review where appeal otherwise complies with mandates of appellate practice).

Accordingly, we proceed to address Appellant's remaining claims.

In his remaining issues, Appellant advances multiple theories regarding why the court should not have granted Appellee's petition for counsel fees. Citing **Hempstead, supra**, Appellant maintains that an Orphans' Court can award counsel fees "where the fees protect a common fund for the administration or distribution under the direction of the court." (Appellant's Brief at 17). Appellant insists that Appellee did not provide services related to the creation or protection of a fund for the "incapacitated person's estate," because the court did not deem Appellant incapacitated. (**Id.** at 18). Likewise, Appellant maintains that Appellee did nothing to create or protect Decedent's estate where Appellee merely helped Appellant to move out of Decedent's residence.[7] To the extent that Appellee's petition for counsel fees cited state and local rules governing Orphans' Court proceedings, Appellant reiterates that such rules apply only in circumstances where an incapacitated person's estate is created.

Appellant acknowledges the Orphans' Court's finding that Decedent's estate and Appellant's guardianship matter were effectively intertwined. Appellant asserts, however, that the Probate, Estates and Fiduciaries Code does not allow "counsel fees in a decedent's estate matter to be considered

---

[7] Thus, Appellant continues to advance the argument he raised in the Orphans' Court, which is that the guardianship and estate matters must be evaluated separately.

and awarded by the Orphans' Court in a guardianship proceeding." (*Id.* at 22). Moreover, Appellant contends that the court erred in finding that Appellee's fees were reasonable where the court "failed to identify anything [Appellee] did in the guardianship matter and instead focused only on what [Appellee] did in regard to the decedent's estate[.]" (*Id.* at 23).

Finally, Appellant attacks Appellee's retainer agreement, which the parties executed in April 2021. Appellant complains that the agreement did not conform to the state Orphans' Court rule governing representation in guardianship proceedings. Appellant argues that the agreement related to Appellee's representation in the estate case, and the parties executed the agreement before the executor filed the guardianship petition. Appellant further argues that he did not authorize Appellee to represent him in the guardianship matter, and Appellee's petition for counsel fees admitted this fact by implication. For these reasons, Appellant concludes that this Court must vacate the decree granting Appellee's petition for counsel fees. We disagree.

The following standard governs our review of an Orphans' Court decree:

> The findings of a judge of the Orphans' Court Division, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact [that] are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's

> findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.
>
> ***In re Estate of Cassidy***, 296 A.3d 1219, 1223 (Pa.Super. Jun. 9, 2023) (citation omitted). "However, we are not constrained to give the same deference to any resulting legal conclusions. … This Court's standard of review of questions of law is *de novo*, and the scope of review is plenary, as we may review the entire record in making our determination." ***In re Estate of Tscherneff***, 203 A.3d 1020, 1024 (Pa.Super. 2019) (citations omitted).

***In re Estate of Schaefer***, 300 A.3d 1013, 1019 (Pa.Super. 2023). "When an appellant challenges a decree entered by the [O]rphans' [C]ourt, our standard of review requires that we be deferential to the findings of the [O]rphans' [C]ourt." ***In re Staico***, 143 A.3d 983, 987 (Pa.Super. 2016), *appeal denied*, 641 Pa. 190, 166 A.3d 1221 (2017) (internal quotation marks and citation omitted).

"An incompetent is liable for necessaries furnished to him prior to the adjudication of incompetency." ***In re Feely's Estate***, 98 A.2d 738, 741-42 (Pa.Super. 1953). "At common law the incompetent's estate was liable for necessaries supplied, on the ground, as was said, that the law implied an obligation on the part of such person to pay for necessaries out of his property." ***In re Cronin***, 326 Pa. 343, 350, 192 A. 397, 400 (1937). "It is, of course, essential to show that the legal services rendered were reasonably necessary for the welfare of the incompetent, before a recovery therefor on

the theory that they are necessaries will be allowed." ***Feely's Estate, supra*** at 742 (quoting 28 Am.Jur. § 64 at 700). ***See also In re Weightman's Estate***, 190 A. 552 (Pa.Super. 1937) (explaining that services provided to incompetent by attorneys and medical experts, in good faith, in course of *habeas corpus* proceedings instituted to secure release of incompetent from state hospital may, in exercise of sound discretion by auditing judge, be considered necessaries properly chargeable in reasonable amount to incompetent's estate, regardless of whether incompetent is released from state hospital).

Likewise, the award of counsel fees in an action involving the administration of an estate is within the sound discretion of the Orphans' Court. ***See In re Estate of Geniviva***, 675 A.2d 306, 313 (Pa.Super. 1996), *appeal denied*, 546 Pa. 666, 685 A.2d 545 (1996) (citing ***In re Estate of Albright***, 545 A.2d 896 (Pa.Super. 1988), *appeal denied*, 522 Pa. 571, 559 A.2d 33 (1989)).

> What is a fair and reasonable fee is sometimes a delicate, and at times a difficult question. The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.

*In re LaRocca's Trust Estate*, 431 Pa. 542, 546, 246 A.2d 337, 339 (1968) (internal footnote omitted).

In *Hempstead, supra*, which Appellant cited in his brief, our Supreme Court discussed counsel fees in the context of legal services that protect a "common fund" for administration or distribution:

> As a general rule, in Pennsylvania each party to adversary litigation is required to pay his own counsel fees. As stated by Gibson, J., in *Alexander v. Herr*, 11 Pa. 537, 'If clients could pay attorney's fees out of the pockets of their opponents, they would pay most liberally.' Nor is there any law in Pennsylvania which will warrant the payment of such fees or expenses incident to the preparation for trial, as costs of the case. In the absence of express statutory authority, counsel fees cannot be allowed from the adverse party.
>
> \* \* \*
>
> There are well-recognized exceptions to this rule. **Where the services protect a common fund for administration or distribution under the direction of the court, or where such fund has been raised for like purpose, it is liable for costs and expenses, including counsel fees incurred.** This is the case, even though the protection given or the raising of a fund results from what may be properly termed adversary litigation. All of our cases bearing on the question, the facts concerned, the administration of estates, insolvent estates, a common fund in existence or to be raised in which the parties interested were directly or indirectly benefited as creditors or as trustees of the fund which ultimately reached designated parties, are illustrated by the following cases….

*Hempstead, supra* at 495-96, 134 A. at 103 (most internal citations and quotation marks omitted) (emphasis added).

As Appellant notes, our Supreme Court subsequently elaborated on the

*Hempstead* holding as follows:

> The Pennsylvania cases allowing awards of attorneys fees and relied upon by the Court in *Hempstead* in arriving at its formulation of the rule involved litigation which protected an estate or fund from fraud or illegal claims. [*Hempstead, supra*] at 496, 134 A. at 103, Citing *Weed's Estate*, 163 Pa. 595, 30 A. 272 (1894) (certain unsecured creditors of insolvent estate brought suit to set aside conveyance and judgments confessed by trustee in fraud of creditors); *Manderson's Appeal*, 113 Pa. 631, 6 A. 893 (1886) (attorney employed on behalf of trustee defended trust estate from certain illegal claims). This element of protection of the fund or estate from fraud was also present in the United States Supreme Court case of *Trustees v. Greenough*, 105 U.S. 527, 26 L.Ed. 1157 (1881), which was cited by the Court in *Hempstead* and relied upon by appellant in the instant appeal.

*Estate of Tose*, 482 Pa. 212, 221, 393 A.2d 629, 633 (1978).

Instantly, the Orphans' Court thoroughly evaluated Appellant's claims and determined that Appellee's work on the guardianship matter was in furtherance of the administration of Decedent's estate:

> [The Superior] Court has previously held that the Orphans' Court did not abuse its discretion in awarding attorney's fees to [an] estate's counsel for his representation of the estate during a matter involving former counsel's mishandling of the estate. [*See Estate of Albright, supra*]. In [*Albright*], [the a]ppellants argued that fees were improperly awarded because most of the fees were awarded due to the mishandling of the administration of the estate, which is separate from the matter in which attorney's fees were awarded, which was for the petition for accounting. *Id.* In finding that there was substantial and competent evidence to support the award of attorney's fees, [the Superior] Court reasoned that "[t]he estate[, as a 'matter,'] was still pending, and the hearings on the petition[, which involved accounting for assets of the estate,] were in furtherance of [its] settlement." *Id.* at 905.

- 12 -

In the instant case, Decedent's estate matter, in which [Appellee] was originally retained to represent Appellant, does intertwine with the subsequent guardianship matter. The guardianship petition was filed in furtherance of the pending estate matter. If there was no estate, there would be no guardianship matter. According to Decedent's will, her home was to be sold six months after her death and the proceeds were to go into a trust for Appellant's benefit. In the guardianship petition filed by Mr. Oakford ("Petitioner") as executor of the estate, Petitioner averred that Appellant continued to reside in the home of Decedent, "refus[ed] to leave, refus[ed] to grant access to anyone including professional social workers, and refus[ed] to cooperate to relocate or prepare the house for sale." In the guardianship petition, Petitioner argued that a plenary guardian was necessary for Appellant in order to provide for the proper relocation and sound viable financial setting of Appellant to receive his inheritance. Petitioner further stated that [Appellee] has attempted unsuccessfully to arrange for less restrictive measures but has failed to do so.

When the guardianship proceedings were underway and a hearing was held on April 25, 2022, GAL Goffney asserted that due to a finding of capacity for Appellant, "[We] now [have a] need [for Appellant] to pack up his belongings and move into his apartment." N.T. 4/25/22 at 4. This implies that there was a clear connection between the estate matter and the guardianship matter in which the guardianship matter allowed the estate matter to move forward. There has been substantial evidence provided to the court to support the award of attorney's fees to [Appellee].

(Orphans' Court Opinion at 13-14) (some capitalization omitted).

As for Appellant's additional arguments, the court found that Appellee

submitted credible evidence to establish his actions on Appellant's behalf:

[Appellee] attached his monthly invoices to his petition for counsel fees, which detailed the legal services rendered and the time required to complete said services. [Appellee] further explained his duties and activities as Appellant's attorney to support the invoices. As [Appellee] was hired to represent Appellant in reference to Decedent's estate, he

- 13 -

was tasked with the duty of assisting Appellant to move out of the Property to comply with Decedent's wishes under her will so that Appellant could receive the proceeds of the sale of the Property in a trust for his benefit. One of the very first statements [Appellee] made at the hearing held on June 20, 2022, was that he "made every effort to try to get [Appellant] to cooperate with what the will required." N.T. 6/20/22 at 3. Not only did [Appellee] aver that he attempted to make this as inexpensive as possible, but he also continued to represent to the court that, during his representation of Appellant, he was concerned for the welfare of his client and feared someone would take advantage of him. *Id.* at 3, 11. [Appellee] stated that Appellant would not cooperate. *Id.* at 10. [Appellee's] averments that Appellant would not cooperate [are] corroborated by both the executor's attorney as well as the guardian *ad litem's* pleadings and arguments presented to this court. N.T. 4/25/22.

Appellant alleged that the Orphans' Court erred in disregarding [Appellee's] admission that he filed an answer after the date of Appellant's letter discharging [Appellee] because "[he] wasn't sure" if he was discharged by Appellant. [N.T. 6/20/22 at 33.] [Appellee] argued that there was an issue as to whether he was discharged because he never received the discharge letter dated November 18, 2021. N.T. 6/20/22 at 32-34. [Attorney] Cunilio maintained that his firm sent the letter via email address and first-class mail. *Id.* at 34-35. Further, [Attorney] Cunilio stated that he would provide to the court confirmation that the email was sent to [Appellee]. *Id.* at 35.

The Orphans' Court never received correspondence or confirmation that the discharge letter was in fact sent to [Appellee]. The Orphans' Court found [Appellee] to be credible. In doing so, the Orphans' Court properly considered and awarded [Appellee] for the services rendered up until [Appellee] was aware of his discharge as Appellant's attorney on November 22, 2021.

(*Id.* at 18-19) (some capitalization omitted).

The court also concluded that the fees at issue were reasonable:

- 14 -

> The Orphans' Court took into consideration the complexity of the matter at issue. The court factored in the specific required services and the troubles involved in attempting to represent Appellant as an heir in his mother's estate. The importance of [Appellee's] work was significant in that his efforts were to ensure Appellant had a place to live as his mother had wished. After a careful analysis of the hours claimed by [Appellee] in his petition, the hours of service rendered were reasonable and justified. The court took the time to ensure [Appellee] was only awarded with reasonable fees for services rendered up until the time that he learned that he was being discharged as Appellant's attorney. N.T. 6/20/22 at 30-32. Upon careful consideration of [Appellee's] petition for counsel fees, the court actually reduced the total amount sought in said petition to make certain that [Appellee] was only compensated for the work done prior to his discharge as Appellant's attorney. *Id.* at 32.

(*Id.* at 23-24) (some capitalization omitted). Regarding the propriety of Appellee's retainer agreement, the court emphasized that Appellee "was retained to represent Appellant in connection with a complicated estate matter on April 13, 2021, which later developed into a guardianship matter." (*Id.* at 15). Because the parties executed the retainer agreement before the filing of the guardianship petition, the court concluded that the retainer agreement did not need to comply with the state Orphans' Court rule governing representation in guardianship proceedings.

In reviewing the Orphans' Court's decision, we conclude that the record is free from legal error, and the court's findings are supported by competent evidence. *See Estate of Schaefer, supra*. Contrary to Appellant's assertions, the record demonstrates that Appellee worked on Appellant's behalf to protect Appellant's share of Decedent's estate. The invoices attached

to the petition for counsel fees highlight specific actions on the part of Appellee, such as "extensive office conference with client on will, assets in estate, possible theft of assets, [and] need to get house ready for sale[.]" (Invoice, dated 5/1/21, at 1). Appellee's actions, in some part, served to protect the "common fund" of Decedent's estate from fraud or illegal claims. *See Estate of Tose, supra*; *Hempstead, supra*. While later invoices evidenced the shift in Appellee's focus toward litigating the guardianship petition, we agree with the Orphans' Court's characterization of these matters as being "intertwined," such that the court possessed the authority to award fees for Appellee's work on both matters from the common fund of the estate. *See Estate of Geniviva, supra*; *Estate of Albright, supra*; *Feely's Estate, supra*. Absent more, we decline Appellant's invitation to second guess the Orphans' Court's credibility determinations and reweigh the evidence. *See Estate of Schaefer, supra*. Accordingly, we affirm the decree granting Appellee's petition for payment of counsel fees.

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/28/2023

- 16 -