J-A01039-23

2023 PA Super 101

| IN RE: ESTATE OF THOMAS P. CASSIDY, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: RYAN KRAWCZYK AND ALEKSANDRA KRAWCZYK | : | |
| | : | |
| | : | |
| | : | No. 1661 EDA 2022 |

Appeal from the Order Entered May 26, 2022
In the Court of Common Pleas of Bucks County Orphans' Court at No(s):
2020-E0433

BEFORE:  LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

OPINION BY LAZARUS, J.:                                  **FILED JUNE 9, 2023**

Ryan Krawczyk and Aleksandra Krawczyk ("Appellants") appeal from the order, entered in the Court of Common Pleas of Bucks County, Orphans' Court Division, denying their petition for declaratory judgment and granting the petition for declaratory judgment filed by Mary Duff and Rita Rome ("Appellees").  Upon careful review, we reverse and remand with instructions.

The Orphans' Court set forth the factual and procedural history of this matter, which is not in dispute, as follows:

> On January 20, 2020, [Thomas P.] Cassidy [("Decedent")] passed away while a resident of Lower Makefield Township, Bucks County[.]  Decedent was survived by his three nieces, [Appellees] and Barbara Hussein, his nephew[,] Joseph Dougherty, and his two former step-grandchildren, [Appellants].
>
> [Decedent] had previously been married to [Appellants'] grandmother, Blandyna Cassidy[ ("Wife")]; however, the marriage ultimately ended in divorce in May 2013.  On May 1, 2013, six days prior to their divorce being finalized, an equitable distribution hearing was held before a Bucks County domestic

relations master. Pursuant to the resultant equitable distribution agreement, [Wife] received the following assets from [Decedent]: (1) fee simple title to the marital residence at 1508 Inverness Court, Warrington[;] (2) a payment in the amount of $82,741.00 to satisfy the existing mortgage on the house in Warrington; and (3) annual alimony payments in the amount of $ 1,560.[00.] The divorce was finalized by a decree entered twelve days after the agreement was finalized. Thereafter[,] on August 13, 2013, [Wife] sold the former marital home for $293,000[.00], and she received the net proceeds.

[Decedent's] Last Will and Testament was drafted in 2009 by S. Jerry Weissman, Esquire, a now[-]retired attorney, who was licensed to practice for nearly fifty years in the Commonwealth of Pennsylvania. On January 30, 2020, [Appellees, who were named as co-executrices in the will,] filed a petition for probate and grant of letters testamentary with the Register of Wills of Bucks County, and offered Decedent's will for probate. That day, the Register of Wills admitted the will to probate and issued letters testamentary to the [Appellees].

On March 20, 2020, [Appellees], through their attorney, Paul L. Feldman, Esquire, sent letters to both [Appellants], which stated the following:

> Please be advised that the undersigned represents Mary Duff and Rita Keegan, in their capacity as co-executrices of the Estate of Thomas J. Cassidy. Pursuant to Pennsylvania statute we are required to issue notice to each person named in a will and each intestate heir of his Estate.

> Although you were named in [Decedent's] will, it was conditioned on the Decedent still being married to your grandmother, Blandyna. Since they were divorced at the time of his death and she received an equitable portion of the marital assets, your bequest is null and void[.]

On August 25, 2020, [Appellants] filed their petition for citation for declaratory judgment to interpret the last will and testament of [Decedent] dated April 27, 2009. On September 18, 2020, [Appellees] filed their cross[-]petition for declaratory judgment. Both petitions requested that the court interpret Article THIRD, [section] (b) of the [Decedent's] will, which is reproduced, *verbatim*, below:

THIRD: I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal as follows:

\* \* \*

b) One-third (1/3) in equal shares to my step-grandchildren, in trust and per capita: RYAN KRAWCZYK and ALEKSANDRA KRAWCZYK; or in the event that either predeceases me or dies within sixty (60) days of my death, decedent's share to my surviving step-grandchild, in trust. **However, notwithstanding the aforesaid, should my Wife, Blandyna Cassidy, either: elect against my Will or recover assets from my or our estate in our divorce after my death, then I hereby revoke and make null and void this bequest of one-third (1/3) of the residue of my estate to my step-grandchildren[,] as they will inherit from my Wife and her daughter, their mother**. And, I hereby give, devise and bequeath this one-third (1/3) bequest of the residue of my estate in equal shares to my nephew and nieces[, Joseph Dougherty, Appellees, and Barbara Hussein,] as set forth above in Section (a) of this Paragraph Third.

An evidentiary hearing to adjudicate the cross-petitions for declaratory judgment was subsequently held on May 12, 2022. On that date, we heard testimony from the [] will's scrivener, [Attorney] Weissman[. Attorney] Weissman advocated that [Decedent's] bequest to [Appellants] was not voided by Decedent's 2013 divorce from [Wife] and her receipt of assets; rather, he asserted that the contested language in Paragraph THIRD was a result of Decedent's concerns over what would have happened to his assets if he were to pass away and equitable distribution proceedings were to continue after his death.

Orphans' Court Opinion, 8/31/22, at 2-5 (citations to record and unnecessary capitalization omitted; emphasis added).

On May 26, 2022, the court entered an order denying Appellants' petition and granting the petition filed by Appellees. In doing so, the Orphans' Court found as follows:

[T]he phrase "after my death" is misplaced.  In reviewing the language of the will, and when read in context with the rest of the subsection, the phrase "as they will inherit from my Wife and her daughter, their mother[,]" clearly indicates that it was Decedent's intent to void the conditional bequest to his former step-grandchildren in the event that [Wife] received benefits either pursuant to spousal election against the will or in the divorce settlement.  It is undisputed that [Wife] did, indeed, receive such benefits as part of the couple's divorce settlement in 2013, seven years prior to his death.

Moreover, as the finder of fact, the [c]ourt was unpersuaded by the testimony offered by the will's scrivener, [Attorney] Weissman[.]  The scrivener was unable to logically explain the meaning of the distribution scheme as the words were written in the [Decedent's will].  . . .

The scrivener's testimony failed to provide the court with reasonable, understandable explanations for the inclusion of certain language within the will.  An explanation as to the practical application of Article THIRD, []section (b) as it was written was essential in order to appropriately assist the court in understanding it.  Such an explanation was not forthcoming from the scrivener. . . .

As a court [that] is duty[-]bound to apply principles of equity, we find that interpreting Article THIRD, []section (b) to be a conditional bequest to the former step-grandchildren, which was contingent upon their grandmother not receiving benefits from Decedent, either through divorce or by election against the will, yields an equitable result.  Were we to construe [the language] as [Appellants] urge, it would afford them a "double-dipping" windfall, since they would therefore be permitted to recover assets which flowed from [Decedent's] estate twice; once as a result of his will . . ., and a second time when they would inherit [Decedent's] assets either directly from their grandmother, [Wife,] or through their mother, [her daughter].

Orphans' Court Opinion, 8/31/22, at 11-12 (unnecessary capitalization omitted).

Appellants filed a motion for reconsideration, which the Orphans' Court denied.  Appellants filed a timely notice of appeal, followed by a court-ordered

Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. They

raise the following claims for our review:

> 1. Did the Orphans' Court err as a matter of law by improperly interpreting [D]ecedent's will, which unambiguously stated that one-third of the residuary estate was for [Appellants] *unless* his soon[-]to[-]be ex-wife was entitled to assets from his estate *after his death*?

> 2. Did the Orphans' Court err as a matter of law by rearrang[ing] the words in [D]ecedent's will to reach a meaning other than its plain meaning?

Brief of Appellants, at 4 (unnecessary capitalization omitted; emphasis in

original).

Our standard for reviewing an Orphans' Court's findings is deferential.

*In re Estate of Harrison*, 745 A.2d 676, 678 (Pa. Super. 2000).

> The findings of a judge of the [O]rphans' [C]ourt [D]ivision, sitting without a jury, must be accorded the same weight and effect as the verdict of a jury, and will not be reversed by an appellate court in the absence of an abuse of discretion or a lack of evidentiary support. This rule is particularly applicable to findings of fact [that] are predicated upon the credibility of the witnesses, whom the judge has had the opportunity to hear and observe, and upon the weight given to their testimony. In reviewing the Orphans' Court's findings, our task is to ensure that the record is free from legal error and to determine if the Orphans' Court's findings are supported by competent and adequate evidence and are not predicated upon capricious disbelief of competent and credible evidence.

*In re Estate of Warden*, 2 A.3d 565, 571 (Pa. Super. 2010) (citation

omitted).

Here, Appellants challenge the court's construction of Decedent's will.

This Court has previously determined:

The testator's intent is the polestar in the construction of every will and that intent, if it is not unlawful, must prevail. Also, we must focus on the precise wording of the will and view the words of the will in the context of the overall testamentary plan. We give effect to word and clause where reasonably possible so as not to render any provision nugatory or mere surplusage. Additionally, we are not permitted to determine what we think the testator might or would have desired under the existing circumstances, or even what we think the testator meant to say. Rather, we must focus on the meaning of the testator's words within the four corners of the will. Finally, a court may not rewrite an unambiguous will.

*In re Wilton*, 921 A.2d 509, 513 (Pa. Super. 2007) (citations, quotations and brackets omitted).

In order to ascertain the actual intent of the settlor or testator, the Court must place itself in his armchair and consider not only the language and scheme of the instrument but also the facts and circumstances with which he was surrounded; and these surrounding facts and circumstances include the condition of his family, the natural objects of his bounty and the amount and character of his property.

*Estate of Pew*, 655 A.2d 521, 534 (Pa. Super. 1994).

Generally speaking, "[a]n ambiguity in a will must be found without reliance on extrinsic evidence; extrinsic evidence is admissible only to resolve, not create, an ambiguity." *In re Estate of Harper*, 975 A.2d 1155, 1162 (Pa. Super. 2009) (citation omitted). "There are two types of ambiguity: patent and latent." *In re Estate of Schultheis*, 747 A.2d 918, 923 (Pa. Super. 2000) (citation omitted). This Court has described the difference between patent and latent ambiguity as follows:

A patent ambiguity appears on the face of the document and is a result of defective or obscure language. A latent ambiguity arises from collateral facts which make the meaning of a written document uncertain, although the language appears clear on the

face of the document. To determine whether there is an ambiguity, it is proper for a court to hear evidence from both parties and then decide whether there are objective indications that the terms of the document are subject to differing meanings.

Where a latent ambiguity exists[,] we have repeatedly held that parol evidence is admissible to explain or clarify the ambiguity, irrespective of whether the latent ambiguity is created by the language of the will or by extrinsic or collateral circumstances. Where a latent ambiguity exists, the court may resort to parol evidence (such as testimony of the scrivener) to determine the decedent's true intent. One limitation to the foregoing is that extrinsic evidence of surrounding facts must only relate to the meaning of ambiguous words of the will. It cannot be received as evidence of the testator's intention independent of the written words employed.

*Id.* (citations, quotations and brackets omitted). Conversely, "[w]here a patent ambiguity exists on the face of the [w]ill and the language is meaningless or senseless or so uncertain as to be unintelligible as written, parol evidence to explain it is not admissible." ***Beisgen's Estate***, 128 A.2d 52, 55 n.3 (Pa. 1956).

Here, Appellants argue that section (b) of Article THIRD is unambiguous and that the Orphans' Court erred by considering extrinsic evidence and, essentially, rewriting Decedent's will. Appellants assert that

"[A] transposition of words may be used to clarify the intent of the testator but not to determine the intent when such intent cannot otherwise be found." ***In re Connor's Estate***, 29 A.2d 514, 516 (Pa. 1943). In other words, a court can only rearrange words in a will to clarify an already existing meaning, but may not do so to give the document a new meaning. ***Id.*** "A court may not, however, under the guise of construction or under general powers of equity assume to correct or redraft the will in which the testator has expressed his intentions." ***In re Thompson Estate***, 327 A.2d [31, 34 (Pa. 1974)]. To engage in such rewriting[] "would be making, not interpreting, [a] will." ***In re Connor's Estate***, 29 A.2d at 516.

Brief of Appellants, at 23.

Even if the court did not err by taking testimony from the scrivener, Appellants assert that the court improperly disregarded that testimony, which was "completely coherent." Brief of Appellants, at 19. Appellants argue:

> [Attorney Weissman] testified repeatedly that [D]ecedent's concern was that he would pass away during the pendency of his divorce. Foremost, [D]ecedent was afraid that if he should die, he would not have control over the assets of his estate that [Wife] would take. However, [D]ecedent lived through the conclusion of his divorce in 2013, and so was able to have his say in the couple's property settlement agreement. [D]ecedent knew what [W]ife had received in their divorce, and was also aware that she was **not** entitled to assets from his estate following his death. Therefore, he intended for the [Appellants] to inherit one-third of his residua[ry] estate. Following his divorce, [D]ecedent lived for seven more years, but never changed his will.

*Id.* at 19-20 (emphasis in original; unnecessary capitalization omitted).

Appellants further argue that the Orphans' Court's interpretation of the will "undermines logic." *Id.* at 23.

> The court concluded that [D]ecedent intended [Appellants] to not receive 1/3 of his residua[ry] estate if [Wife] "recover[s] assets from my or our estate in our divorce." However, at the time the will was executed, [D]ecedent was in the **middle** of an ongoing divorce—it goes without saying that in the divorce proceedings, [Wife] was going to receiv[e] **some** property "from my or our estate." Therefore, if the [Orphans' Court's] reading is adopted, then [D]ecedent knew at the time the [w]ill was drafted that his bequest to [Appellants] would be void. This is farfetched. Instead, it is more logical that [D]ecedent was only concerned with [Wife] receiving assets from his estate "after his death"—this is what the will clearly says, and also what the [scrivener] testified [D]ecedent meant.

*Id.* at 23-24 (unnecessary capitalization omitted; emphasis in original).

In response, Appellees assert that the Orphans' Court properly found that the phrase "after my death" in Article THIRD, section (b) "was inserted in the wrong place in the will. Rather than following the phrase 'in our divorce,' it should have been inserted after the phrase which precedes it, 'elect to take against my will.'" Brief of Appellees, at 10-11. Appellees argue that

> [i]t is not logical that [Decedent] would condition the bequest on the timing of his death, with the result being that if [Wife] received the divorce settlement assets during his life, then the bequest stands, but if she received the divorce settlement assets after his death, then the bequest is void.

*Id.* at 11.

We are constrained to conclude that, while the Orphans' Court properly admitted parol evidence to aid in its interpretation of Decedent's will, it improperly disregarded that evidence and, instead, engaged in the impermissible redrafting of the Decedent's will. As noted above, extrinsic evidence is admissible in the case of a latent ambiguity, "irrespective of whether the latent ambiguity is created by the language of the will or by extrinsic or collateral circumstances." *In re Estate of Schultheis*, 747 A.2d at 923 (finding latent ambiguity in language bequeathing "my shares of stock" because it was unclear whether phrase referred only to 2,045 shares specifically referenced in will or to all 3,288 shares owned by decedent time of death). Here, the language in question, while clear on its face, becomes ambiguous when read in the context of Decedent's circumstances at the time he drafted his will. Specifically, read together, the language "after my death" and "as they will inherit from my Wife and her daughter, their mother," are

rendered ambiguous in light of Decedent's pending divorce at the time he drafted the will, as Appellants would inherit from Wife and/or her daughter whether Wife received the assets prior to or after Decedent's death. Accordingly, the admission of the scrivener's testimony was proper. ***See Estate of McKenna***, 489 A.2d 862, 867 (Pa. Super. 1985) (where language of testator is unimpeached, but equivocal or ambiguous, scrivener's testimony as to testator's intent admissible for purposes of interpretation).

Having taken that testimony, however, the court proceeded to completely disregard it and to engage in the impermissible redrafting of the Decedent's will to achieve what it believed to be the "equitable" result. However, "[c]ourts cannot . . . rewrite a . . . testator's will, or distort or torture his language . . ., in order to attain what we believe is beneficial and wise[.]" ***In re Brown's Estate***, 183 A.2d 307, 310 (Pa. 1962).

Here, the court did not find the scrivener's testimony incredible. ***See In re Estate of Warden***, ***supra*** (this Court bound by Orphans' Court's credibility determinations where supported by record). Rather, the court concluded that the scrivener, Attorney Weissman, "was unable to logically explain the meaning of the distribution scheme" contained in Decedent's will. Orphans' Court Opinion, 8/31/22, at 11. However, upon our review of Attorney Weissman's testimony, we conclude that the court's determination is not supported by the record, as we had no difficulty in understanding the Decedent's clear intent as elucidated by the scrivener.

At the hearing held on May 12, 2022, Attorney Weissman testified that he had represented the Decedent for twelve to fourteen years and considered him to be not only a client, but a friend. *See* N.T. Hearing, 5/12/22, at 10-11. Attorney Weissman stated that, at the time Decedent drafted his will, "[t]he divorce had not yet been settled, which is the reason why that complicated paragraph is in existence." *Id.* at 13. Attorney Weissman testified that "[Decedent] and I worked on that wording by telephone, in person[,] and by letter. It was very carefully put down by the both of us." *Id.* at 15-16. He stated that there were no typographical errors in the document or missing words and that there were no "concerns that words were out of place[.]" *Id.* at 16. On direct examination by Appellants' counsel, Attorney Weissman explained the Decedent's intent behind Article THIRD, section (b) as follows:

> Q: [] I come now to the second page of this [Article] Third[, subsection] (b), I'd like to draw your attention to where it says, ["]however, notwithstanding the aforesaid, should my wife, Blandyna [] Cassidy, either, colon.["] Do you see that?
>
> A: Yes. Well, I'll look, but I know what you're speaking of.
>
> Q: Then it has two clauses connected by an ["]or.["] I'd like to discuss each one of those with you in turn.
>
> A: Yes.
>
> Q: First it says, ["]elect to take against my will.["] What [were] [Decedent's] intentions regarding that qualification?
>
> A: Well, they were not yet divorced, and he was much older; and if he passed away, he couldn't control what the divorce would be. She could take—there's a phrase called ["]taking against the

will.["1] That would be one exception. If she took against the will, he wanted to nullify [the] gift to the grandchildren.

Q: Now, when you made [] the comment just then, you said, he couldn't control the divorce—I think that's what you said—if he were to die.

A: Yes. He couldn't control the assets she might take. They weren't yet divorced.

Q: Okay. Understood. Then after the ["]or["] we have another clause that reads: ["r]ecover assets from my or our estate in our divorce after my death.["] Do you see that?

A: Oh, yes.

Q: What [were Decedent's] intentions regarding [] that condition?

A: This will was executed in 2009. I believe that maybe four years prior, there was an amendment to the Divorce Code[2] which said basically that if grounds were established, meaning both parties file a [section] 3301(c) affidavit agreeing to a divorce, or if one party files a [section] 3301(d) affidavit [alleging] two-year separation, and so grounds are established for the divorce, that if one party passes away—[Decedent] was worried that would be him—the other party could continue the equitable distribution

_____

[1] Section 2203 of the Probate, Estates, and Fiduciaries ("PEF") Code establishes a surviving spouse's "right of election," which entitles the surviving spouse to the "elective share," a one-third allotment of enumerated categories of the deceased spouse's property. 20 Pa.C.S.A. § 2203(a).

[2] Section 3323(d.1) of the Domestic Relations Code provides as follows:

(d.1) Death of a party.--In the event one party dies during the course of divorce proceedings, no decree of divorce has been entered and grounds have been established as provided in subsection (g) [(referencing section 3301)], the parties' economic rights and obligations arising under the marriage shall be determined under this part rather than under 20 Pa.C.S. (relating to decedents, estates and fiduciaries).

23 Pa.C.S.A. § 3323(d.1).

matter, and [Decedent] would be gone, so in the same sense he couldn't control what Blandyna would take.

And he—not in a nasty way. He just said, look, if she takes more than I know of, these [] grandchildren get it from her estate or her daughter's estate. That was his thinking. And that's what I tried to write down.

Q: [A]m I correct that his concern was that if he died during the divorce proceedings, he wanted to make provision for that?

A: Exactly right. And [if] she also continued the [equitable distribution]. Yes, that's what that's about.

*Id.* at 17-19.

Attorney Weissman further clarified Decedent's intent on cross-examination:

Q: Well, then why was that language, the latter part of that sentence, why was that language even included in the will? ["]As they will inherit from my wife and her daughter, their mother.["] Why was that even put in the will? What was the purpose of that?

A: Because of [Decedent's] kindness. He was a kind person, and he wanted [them] to know that it wasn't bitterness on his part, that they would—if she took more than he approved after he was gone, he felt they eventually would get that money.

*Id.* at 28.

In our view, Attorney Weissman's testimony was clear and made logical sense. Decedent was concerned that, were he to die before his divorce was concluded, he would have no control whatsoever over what Wife might take from his estate, either in equitable distribution or by taking against his will under the PEF Code. Anticipating that she might, under those circumstances, receive more than he would have wished, he nullified Appellants' bequest in the event either one of those circumstances came to pass. Moreover, not

- 13 -

wishing Appellants—of whom he was "extremely fond," *id.* at 17—to read any bitterness or rancor into the potential revocation of their bequest, Decedent included language explaining that they would still receive assets from his estate through their grandmother and/or mother.

Moreover, as Appellants point out, were we to accept the Orphans' Court's interpretation—or, more precisely, rewriting—of the Decedent's will, the result would be nonsensical, as the bequest to Appellants would have been void *ab initio*. In the view of the Orphans' Court, Decedent intended for the relevant portion of Article THIRD, section (b), to read as follows:

> However, notwithstanding the aforesaid, should my Wife, Blandyna Cassidy, either: elect to take against my Will **[after my death]** or recover assets from my or our estate in our divorce **[]**, then I hereby revoke and make null and void this bequest of one-third (1/3) of the residue of my estate to my step-grandchildren as they will inherit from my Wife and her daughter, their mother.

Orphans' Court Opinion, 8/31/22, at 10 (emphasis in original). However, at the time he executed his will, Decedent would have known that Wife would, to one extent or another, "recover assets from my or our estate in our divorce." **See Estate of Pew**, 655 A.2d at 534 (court must place itself armchair of testator and consider not only language and scheme of will but also facts and circumstances with which he was surrounded). To conclude that Decedent "very carefully," N.T. Hearing, 5/12/22, at 15-16, included Article THIRD, section (b), knowing it to be entirely inoperative from the moment of its drafting, would lead to an absurd result that Decedent could not possibly have intended.

Finally, we note that Decedent lived on for nearly seven years after the conclusion of his divorce proceedings. Thus, he had ample opportunity to revise his estate plan, had his concern been that Appellants should not be entitled to "double-dipping," as the Orphans' Court concluded. The fact that he did not draft a codicil or subsequent will revoking the bequest to Appellants following the conclusion of equitable distribution is indicative of his satisfaction with the existing will. *See In re Kirchner's Estate*, 20 A.2d 310, 312 (Pa. 1941) (where, despite changed circumstances, testator does not alter will, failure to do so "significant" indicia of intent to maintain original dispositive scheme).

Accordingly, we conclude that the only reasonable interpretation of Article THIRD, section (b) is that Decedent meant exactly what he said in revoking the bequest to Appellants **only** in the event that Wife (1) elected to take against his will pursuant to section 2203 of the PEF Code or (2) recovered assets from his or their estate **after** his death pursuant to section 3323 of the Domestic Relations Code. Accordingly, we reverse the order entered by the Orphans' Court and remand for the entry of an order consistent with the dictates of this opinion.

Order reversed; case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/9/2023