J-A08007-24

2024 PA Super 147

| ESTATE OF WALTER EDMONDS, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: ATA ZANDIEH | : | |
| | : | No. 2500 EDA 2023 |

Appeal from the Decree Entered September 5, 2023
In the Court of Common Pleas of Philadelphia County Orphans' Court at
No(s):  88DE 2020

BEFORE:  BOWES, J., OLSON, J., and McLAUGHLIN, J.

OPINION BY BOWES, J.:                                    **FILED JULY 16, 2024**

Ata Zandieh ("Appellant") appeals from the decree denying his petition seeking specific performance of an agreement for sale of real property that he reached with estate beneficiary Langston A. Edmonds ("Langston").  Upon review, we reverse and remand with instructions.

The pertinent history of this case is as follows.  Walter Edmonds ("Decedent") was a prominent artist who resided in Philadelphia.  Decedent was the father of seven children:  Langston, Pamela Edmonds ("Pamela"), Walter F. Edmonds ("Walter"), Zachary S. Edmonds ("Zachary"), Nicole Edmonds ("Nicole"), Hope Edmonds ("Hope"), and Jennifer Edmonds a/k/a Jennifer Triplett ("Jennifer").  Mathilde Petty ("Mathilde") was the mother of Zachary, Nicole, and Langston.  It appears that Diane Triplett ("Diane") was the mother of Jennifer.  It is unclear from the certified record who was the mother of Pamela, Walter, and Hope.

During his lifetime, Decedent acquired five parcels of real estate in Philadelphia. Three were located on South 46th Street at 1120, 1121, and 1208; one was at 1215 Markoe Street; and the last was 239-243 Farragut Terrace, later known as Farragut Street. While the other four were residential properties, the Farragut Terrace lot (hereinafter "the Property"), was primarily a series of garages which ran perpendicular to the street and shared a common driveway and were available for rent by third parties.

Decedent procured the Property in 1976 by way of two deeds. The first, dated January 28, 1976, placed the parcel at issue approximately sixty feet from the intersection of Farragut Terrace and Locust Street. It was described as being a rectangle of roughly forty-seven feet by thirty-three feet abutting a twenty-two-foot-wide driveway over which there was a right of free use. *See* Exhibit 1. The remainder of the Property, which had been erroneously omitted from the initial deed, was conveyed to Decedent by deed of May 17, 1976. The second deed identified four other rectangles of land as premises "A" through "D" and described them as being situated side by side along the same driveway, progressively farther away from Farragut Terrace. Each of these parcels also shared free access to the driveway subject to a proportionate share of maintenance costs for the driveway. *See* Exhibit 2.

Both deeds listed the street address for the Property as "239 S. Farragut Terrace." *See* Exhibits 1 & 2. However, a prior owner, in an application to use the Property as six garages, provided the street address as "239-243 So.

- 2 -

Farragut Terrace." **See** Exhibit 8. Likewise, the City of Philadelphia treated the Property as a single lot with the address of 239-243 Farragut Street for purposes of the Office of Property Assessments. **See** Exhibit 5 (depicting the Property as one lot); Exhibit 6 (identifying a property tax account number of 461184605 for "239-43 Farragut St").

Purely as a visual aid, we offer the following image of the Property, which is a modified version of Appellant's trial Exhibit 4:



*See* Exhibit 4 (modified by the addition of text reflecting trial testimony and other evidence).

In February 1990, Decedent completed an application for a zoning permit to convert "239-43 S. Farragut Terrace" from its use for auto storage into a six-unit apartment building with one off-street parking space per family, attaching a plan that he caused to be drafted in May 1987. *See* Exhibit 8. The plan was refused based upon, *inter alia*, the required set-back distance from the street. *Id*. Thus, the Property remained a series of car garages with the single, small residence. While Walter initially assisted Decedent in maintaining the garages, Langston took on that duty when Walter left to operate his own business.

On November 28, 1988, between the time Decedent obtained the plan to develop the property and the time he submitted his application to do so, Decedent executed his last will and testament ("the Will"). *See* Exhibit 9. Therein, he made the following specific bequests:

- a 1969 Mercedes-Benz automobile to Diane;
- 1120 South 46th Street in equal shares to Walter and Zachary;
- 1121 South 46th Street in equal shares to Mathilde and Nicole;
- 1208 South 46th Street in equal shares to Pamela, Hope, and Jennifer;
- 1215 Markoe Street in equal shares to Pamela, Hope, and Jennifer; and
- "239-241 Farragut Terrace" to Langston.

*See* Exhibit 9 at 1-2. Decedent further left all his personal property within 1208 South 46th Street to Mathilde and made her the residuary beneficiary of his estate. *Id*. at 2-3.

Decedent died on June 12, 2011, without having modified the Will. Mathilde originally was appointed to administer the estate. In that capacity, for reasons not apparent from the certified record, she filed a disclaimer as to her interest in 1121 South 46th Street and provided Nicole with a deed to that property in August 2012. *See* Exhibit 10. When years passed and the estate administration had yet to be completed, Zachary filed a petition to remove his mother as administrator. As a result, he, Pamela, and Walter (collectively "administrators") were granted letters of administration in May 2015. Shortly thereafter, the three administrators conveyed 1208 South 46th Street, 1120 S. 46th Street, and 1215 Markoe Street from the estate to the respective devisees. *See* Exhibits 11-13. However, 239-243 Farragut Street remained in the estate.

In August 2019, Appellant and Langston executed a contract by which Langston agreed to sell "239-43 S. Farragut St (461184605 OPA#)" to Appellant for $264,200. *See* Exhibit 14. The contract set closing to occur on January 20, 2020. Apparently informed that the closing would not go forward as agreed, Appellant on the scheduled closing date filed a petition for citation for specific performance of the agreement of sale of the Property. Therein, he requested that the orphans' court issue a decree directing Langston, Walter,

Pamela, and Zachary to appear for a real estate closing within thirty days for the sale of the property to proceed. Langston and the administrators opposed the petition, contending that because the Will devised 239-241 Farragut Street instead of 239-243 Farragut Street, Langston did not have legal title to the Property, or at least not the undefined portion of it that could be considered as 243 Farragut Street. They maintained that Langston's contract to sell the whole Property to Appellant was therefore unenforceable.

The orphans' court conducted a trial on the petition on September 28, 2021.[1] Appellant testified concerning the above-referenced public records he uncovered describing the Property as 239-243 Farragut Street, proffering those and Decedent's Will into evidence. Appellant further testified that he was aware that there was a discrepancy in the stated address for the Property in the Will, but he concluded it was a typographical error. *See* N.T. Trial, 9/28/21, at 90. He also offered into evidence the deeds by which the administrators transferred the other parcels of real estate devised by the Will to the corresponding devisees.

Appellant explained to the court his dealings with Langston in which he advised Langston of his interest in acquiring the Property, which Langston indicated he was managing and operating at the time. *Id*. at 67-68. Langston had been having difficulty selling the Property because Zachary refused to

_____

[1] Of note, the scrivener of the Will died prior to the 2021 trial and his files were unavailable. *See* N.T. Trial, 8/10/23, at 49.

- 6 -

transfer it to Langston. *Id*. at 69. Nonetheless, the administrators had not been paying the taxes on the Property. *Id*. at 76. Ultimately, Appellant and Langston agreed on a sale price of $264,200 and executed a written contract. While Walter and Pamela were willing to cooperate to complete the transaction, Zachary refused. *Id*. at 77, 81.

Appellant next called Langston to testify as if on cross-examination. He confirmed his agreement to sell the Property to Appellant. *Id*. at 94. Langston further indicated that Decedent had always used the Property as a single parcel, and that he was the one of Decedent's children who assisted him in maintaining it. *Id*. at 96-98. When the administrators conveyed Decedent's other parcels of real estate to their respective devisees, Langston was unhappy because Decedent had made it clear that he wanted Langston to have the whole Property. *Id*. at 99-100. Decedent never indicated that the Property was to be subdivided such that Langston would get less than the whole. *Id*. at 100. Langston had no question in his mind that the reference in the Will to 239-241 Farragut Terrance instead of 239-243 was a mistake. *Id*. at 104.

Zachary, who is an attorney, represented himself as well as Walter, Pamela, and Langston at trial, and called Langston to testify. Langston stated that he moved into the residence on the Property after Decedent's death. Langston switched the Property's electric utility into his own name and received his bill addressed to 243, and also received a state-issued

identification card listing only 243 as the address. *Id*. at 135-36. Langston indicated that, after consulting with Zachary, he came to understand that, because the Will listed only two of the three numbers associated with the Property's Farragut Street address, he either had to subdivide the Property in order to obtain title to his two-thirds of it, or have Mathilde sign over her interest in the remaining third as she did with the property devised to Nicole. *Id*. at 126-29. He observed that Decedent had other personal property at the time of his death that was not specifically devised in the Will, such as artwork and multiple vehicles. *Id*. at 140.

On re-cross, Langston acknowledged that the tax bill for the Property is addressed to 239-243. He further resumed his initial position of asserting that Decedent intended the whole Property to go to him, that he did not require his mother Mathilde's permission or agreement to sell the Property, that he intended to sell the whole of the Property to Appellant, and that the only reason he did not was because Zachary would not cooperate in his role as estate co-administrator. *Id*. at 151-56.

The orphans' court took the matter under advisement and ultimately dismissed Appellant's petition, concluding that his agreement with Langston was unenforceable because Langston contracted to sell more than the Will devised to him. Specifically, the court indicated that it was required to look to the sale agreement and the Will to determine whether to grant the requested specific performance. *See* Trial Court Opinion, 3/30/22, at 10. It

opined that Appellant's evidence concerning the past treatment of the Property as a single parcel and Decedent's intent in making the Will were irrelevant. *Id*. at 10-11. Appellant appealed to this Court.

In ***Estate of Edmonds***, 290 A.3d 688, 2022 WL 17755792 (Pa.Super. 2022) (non-precedential decision), we noted that the orphans' court deemed itself bound to the four corners of the Will to determine what property Decedent devised to Langston. *Id*. at *2 (Pa.Super. 2022) (non-precedential decision). As a result, "effectively, the court reviewed the [W]ill and the agreement, saw that there was a numerical inconsistency between the documents, and concluded that Langston could not agree to sell property that was not literally devised to him under the [W]ill." *Id*. at *3. However, this Court observed that parol evidence may be utilized to establish that the four corners of the Will contained a mistake. *Id*. Since the orphans' court conducted "no analysis into whether the court had any power to hear parol evidence and act accordingly," we concluded that "development into the question of the court's ability to either interpret or correct a will warrants further consideration." *Id*. Therefore, we ruled as follows:

> On remand, the court is to explicitly determine, based on the action before it, if it has the power to ascertain whether there is an error in the [W]ill. If it finds in the affirmative, then, the court must decide whether parol evidence establishes that will reformation is necessary and proceed from there.

*Id*. Consequently, the orphans' court scheduled a trial following the taking of discovery.

The case proceeded to trial on August 10, 2023.[2]  At the outset, Appellant offered the exhibits and notes of testimony from the September 2021 hearing, which the court ultimately admitted in the absence of any objection.  *See* N.T. Trial, 8/10/23, at 45-46.  He then called Walter to testify as if on cross-examination.  Walter confirmed that Decedent had always treated the property as a single, combined lot that Walter initially helped maintain, until Walter left in 1979, after which Langston helped with the property maintenance.  *See* N.T. Trial, 8/10/23, at 21-22.  Decedent had never expressed any intent to divide the property.  *Id*. at 25.  Walter believed that Decedent's intent, as expressed in the Will, was to convey the entirety of the 239-243 Farragut Street parcel to Langston.  *Id*. at 25-26.  After all the other properties had been transferred to the devisees, Walter hired a lawyer to draft a deed conveying the Property to Langston in accordance with Decedent's wishes, but Zachary refused to execute the document.  *Id*. at 30-31. Walter was still prepared to sign a deed transferring the Property to Langston because that is what he believed Decedent wanted.  *Id*. at 32.

Appellant next called Pamela to testify as if on cross-examination.  She confirmed that Langston was the sibling who helped Decedent maintain the

_____

[2] Appellant appeared with counsel.  Zachary sought to oppose modification of the Will representing both himself and the estate.  The orphans' court permitted him to advocate only for himself, citing potential conflicts of interest.  Thus, the estate was not represented by counsel at the hearing and advocated no position as to Decedent's intent.

Property. *Id*. at 35. She testified that she was familiar with the Will and Decedent's desire to keep all his real estate in the family. *Id*. at 36. Pamela further indicated her familiarity with Decedent's vision to convert the entire Property into apartments and an artist's studio with Langston's assistance. *Id*. at 36-40. Pamela agreed that, according to the Will, Decedent desired to give the whole of the Property to Langston. *Id*. at 42. She had been ill during the time when Walter had a deed drafted to convey 239-243 Farragut Street to Langston, but she was at the time of trial prepared to execute a deed transferring the Property to Langston. *Id*. at 43.

Appellant moved Exhibits 1 through 20 into evidence and rested. Zachary called Walter, who failed to offer any additional pertinent evidence. *Id*. at 47-48. Thereafter, Zachary did not himself testify or offer any other witness to establish an understanding contrary to that expressed by Walter, Pamela, and Langston as to Decedent's intent for the disposition of the Property. Rather, he rested.

By decree entered September 5, 2023, the orphans' court denied Appellant's petition. The court's stated basis for the denial was that Appellant "failed to present any parol evidence sufficient to establish that the Will reformation was necessary." Decree, 9/5/23. The court additionally noted as follows: "[T]he relief sought by [Appellant] would require this [c]ourt to disinherit the residuary beneficiary which under these facts, it is not prepared to do. [Appellant] can easily enter a real estate agreement for the purchase

of the interests of both [Langston] and that of [Mathilde] without harm to either." *Id*. at n.2.

This timely appeal followed.[3] The orphans' court did not order Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and none was filed. Nor did the orphans' court file a Rule 1925(a) opinion.[4] Appellant presents the following questions for our review:

> A. Did the court below commit a manifest abuse of discretion or error of law in finding that [A]ppellant failed to present any parol evidence to establish that reformation of the [W]ill was necessary when the **only** evidence presented at trial was that the address used in the will was incorrect and that the address described a property that did not legally exist?
>
> B. Did the court below capriciously disregard the evidence in finding that [A]ppellant failed to present evidence sufficient to establish that reformation of the will was necessary when the **only** evidence presented at trial was that the intention of [D]ecedent was to transfer the entirety of his property on

---

[3] Between the entry of the decree and the appeal, Appellant filed a post-trial motion, which the orphans' court purported to deny months after the appeal was taken. Appellant also filed a praecipe for entry of judgment following the notice of appeal. The appeal here was properly taken from the September 5, 2023 decree prior to the disposition of Appellant's post-trial motion because post-trial motions other than a motion for reconsideration are not permitted according to Pa.R.O.C.P. 8.1 and 8.2, and an appeal may be taken as of right from an orphans' court order determining an interest in real property pursuant to Pa.R.A.P. 342(a)(6).

[4] Contrary to this Court's order, the orphans' court did not make an explicit finding as to whether extrinsic evidence was available to assist it in interpreting or correcting the Will. Rather, it denied Appellant's petition upon ruling that he "failed to present any parol evidence sufficient to establish that reformation was necessary." Decree, 9/5/23. Since the court did **not** find that parol evidence was unavailable or incredible, or that there was no ambiguity or mistake, we conclude that we may resolve the issues in this appeal without an additional remand for the reasons explained *infra*.

Farragut Street to his son Langston, and when there was no
evidence whatsoever that the decedent intended to require his
personal representatives to effectuate a subdivision of the
property after his death to create a new parcel of land that would
be split between his son and his son's mother?

C.   Did the court below commit a manifest abuse of
discretion or error of law in finding that [A]ppellant was obligated
to obtain the signatures of the administrators on the agreement
of sale for it to be effective?

D.   Did the court below commit a manifest abuse of
discretion or error of law in finding that the relief requested by
[A]ppellant would result in an impermissible disinheritance of the
residuary beneficiary, particularly when the unrebutted evidence
was that the residuary beneficiary had approved of the sale to
[A]ppellant?

Appellant's brief at 4-5 (emphases in original).

We begin with a review of the applicable legal principles:

The [o]rphans' court is a court of equity, which means that in the
exercise of its limited jurisdiction conferred entirely by statute, it
applies the rules and principles of equity.  In equity matters, we
must accept the [lower] court's finding of fact, and cannot reverse
[its] determination absent a clear abuse of discretion or error of
law.  The [orphans'] court's conclusions of law, however, are not
binding on an appellate court because it is the appellate court's
duty to determine if the [orphans'] court correctly applied the law
to the facts of the case.  If a decision of the [o]rphans' court lacks
evidentiary support, this Court has the power to draw our own
inferences and make our own deductions from facts and
conclusions of law.

*In re Mihordin*, 162 A.3d 1166, 1171 (Pa.Super. 2017) (cleaned up).

Appellant's first two issues concern the orphans' court's construction of

the Will.  In this vein we observe that "[t]he testator's intent is the polestar

in the construction of every will and that intent, if it is not unlawful, **must**

prevail."  *In re Estate of Schaefer*, 300 A.3d 1013, 1020 (Pa.Super. 2023)

(cleaned up, emphasis added). "[I]n ascertaining the testator's intention, a will is to be construed as of the date of its execution." *In re Estate of Tscherneff*, 203 A.3d 1020, 1024 (Pa.Super. 2019) (emphasis omitted).

> In order to ascertain the actual intent of the settlor or testator, the Court must place itself in his armchair and consider not only the language and scheme of the instrument but also the facts and circumstances with which he was surrounded; and these surrounding facts and circumstances include the condition of his family, the natural objects of his bounty and the amount and character of his property.

*In re Estate of Cassidy*, 296 A.3d 1219, 1223 (Pa.Super. 2023) (cleaned up). "Where words used might under a given construction lead to a result that is highly improbable, the court will lean toward a construction that will carry out the natural intention of the testator." *In re Estate of McFadden*, 100 A.3d 645, 650 (Pa.Super. 2014) (cleaned up).

While a court may not alter the terms of an unambiguous will in order to effectuate what it believes was the intent of the testator, extrinsic evidence is admissible to resolve an ambiguity. *See Estate of Cassidy*, 296 A.3d at 1223. Pertinent to the case *sub judice*, "[a] latent ambiguity arises from collateral facts which make the meaning of a written document uncertain, although the language appears clear on the face of the document." *Id*. at 1224 (cleaned up). "To determine whether there is an ambiguity, it is proper for a court to hear evidence from both parties and then decide whether there are objective indications that the terms of the document are subject to differing meanings." *Id*. (cleaned up). When there is a latent ambiguity:

> [W]e have repeatedly held that parol evidence is admissible to explain or clarify the ambiguity, irrespective of whether the latent ambiguity is created by the language of the will or by extrinsic or collateral circumstances. Where a latent ambiguity exists, the court may resort to parol evidence (such as testimony of the scrivener) to determine the decedent's true intent. One limitation to the foregoing is that extrinsic evidence of surrounding facts must only relate to the meaning of ambiguous words of the will. It cannot be received as evidence of the testator's intention independent of the written words employed.

*Id*. (cleaned up). In other words, while parol evidence concerning a testator's intent may not contradict or alter the will, it may be utilized to aid in interpreting the ambiguous language. ***See Logan v. Wiley***, 55 A.2d 366, 369 (Pa. 1947).

In a similar vein, if parol evidence establishes that the scrivener made a mistake in preparing the will, then the instrument is subject to reformation. ***See In re Mihordin***, 162 A.3d 1166, 1172 (Pa.Super. 2017). Such parol evidence must confirm the mistake "by evidence that is clear, precise, convincing and of the most satisfactory character." ***In re Duncan's Estate***, 232 A.2d 717, 720 (Pa. 1967) (cleaned up). Since the orphans' court had the opportunity to observe the witnesses proffering parol evidence concerning an alleged mistake, this Court will not disturb its determinations as to the credibility and weight of the testimony where supported by the record. ***Id***. Nonetheless, the ruling of the orphans' court "upon the question of whether the evidence introduced to reform a written instrument meets the standard of being clear, precise and convincing . . . is open to review" by the appellate court. ***Id***. (cleaned up).

To recap, in the instant case, the orphans' court initially ruled that Appellant was not permitted to offer extrinsic evidence to establish that the Will's use of "239-241 Farragut Terrace" gave rise to a latent ambiguity or was a scrivener's error. As that was contrary to the law cited above, we remanded the case for further consideration of "the question of the court's ability to either interpret or correct a will[.]" **Estate of Edmonds**, 2022 WL 17755792, at *3. Rather than finding that it had no ability to ascertain whether extrinsic evidence would assist in interpreting or correcting the Will, the orphans' court indicated that the parol evidence did not require reformation because the court was "not prepared to" disinherit Mathilde of the share of the Property that it viewed as passing to her under the Will's residuary clause. **See** Decree, 9/5/23, at n.2.

Appellant argues that the finding of the orphans' court stemmed from a capricious disregard of the trial evidence. **See** Appellant's brief at 31. In particular, he highlights that: (1) the scheme of the Will evinced an intent to make specific devises of all Decedent's real estate to family members; (2) there was no parcel of land known as 239-241 Farragut Terrace; (3) Decedent always used the Property as one integrated parcel of land and never expressed an intent to subdivide it; (4) Langston, Walter, and Pamela all testified that Decedent intended to devise the entire Property to Langston; and (5) Zachary produced no evidence to support a finding that the use of 239-241 instead of 239-243 in the Will was not a mistake. **Id**. at 35-40.

Further, Appellant contends that "[t]o conclude that the address used in the [W]ill was correct, such that a subdivision of the property was required so that part of an integrated parcel of land could be conveyed to Langston, and the remainder of the integrated parcel of land could be conveyed to the residuary beneficiary, is an unnatural and absurd conclusion that should be avoided." *Id*. at 33 (cleaned up). Thus, Appellant maintains that this evidentiary record "was clear, convincing and unrebutted that [D]ecedent intended to . . . devise the entire 239-43 Farragut Street [P]roperty to Langston," and the orphans' court was thus obligated "to enforce [D]ecedent's intent and add 243 to the address used in" the Will. *Id*. at 33.

Zachary counters that Appellant "presented **zero** evidence of the intent of [D]ecedent when drafting the [W]ill." Zachary's brief at 10 (emphasis in original). He asserts that the testimony Appellant offered spoke to the personal beliefs of the witnesses as to Decedent's intentions rather than "the intent of [D]ecedent **when drafting his will**." *Id*. at 11 (emphasis added). With this dearth of testimony concerning Decedent's expressed intent during the pertinent timeframe, and the testimony and records of the scrivener unavailable, Zachary argues that Appellant's proof was woefully insufficient to satisfy his burden. *Id*. Zachary further assails Appellant's failure to call him or Mathilde at either trial, suggesting that Appellant made that choice to avoid having her contradict Langston's testimony and assert her own interests in the Property. *Id*. at 11-12.

In reply, Appellant observes that he had no obligation to call Zachary or Mathilde as witnesses, and that Zachary's failure to do so implies that he had no evidence to support his position or to contradict Appellant's evidence that the 239-241 address was a mistake. *See* Appellant's reply brief at 1-4. Appellant further highlights that the evidence in question included not just the testimony of Decedent's children as to his testamentary intent, but also the documentary evidence that: (1) before, during, and after Decedent's acquisition of the Property, it was always used as a single parcel of land with the address of 239-243; (2) eighteen months before he executed the Will, Decedent commissioned the preparation of a plan for 239-243 Farragut Street to be developed into apartments and an artist studio; (3) he submitted that plan to the City of Philadelphia sixteen months after executing the Will despite its reference to 239-241; (4) to create a 239-241 parcel, the five legal descriptions in the deeds by which Decedent acquired the Property would have to be subdivided into two parcels with different addresses; and (5) Langston was the child who worked with Decedent to maintain the entirety of the Property at the time Decedent drafted the Will. *Id*. at 6-8. Given these undisputed circumstances, and the scheme of distribution manifested by the language of the Will, Appellant maintains that the only supported finding is that the reference to "239-241" instead of "239-243" Farragut Street was a mistake that must be corrected to effectuate Decedent's intent. *Id*. at 8-9.

We begin our analysis of these arguments by noting our agreement with Zachary that Appellant's parol evidence did not properly address Decedent's intent. As noted *supra*, parol evidence pertinent to that question concerns his intent at the time he made his will, and typically is proffered by the scrivener or others to whom the decedent relayed his plans at the time of the will's drafting. **See Estate of Tscherneff**, 203 A.3d at 1024. Here, Appellant's evidence established that Walter, Pamela, and Langston interpreted the Will to express an intention to leave the whole of the Property to Langston. The witnesses did not indicate that Decedent communicated that intention to them at the time the Will was drafted in 1988.

Nonetheless, we have no hesitation in concluding that we must reverse the orphans' court's decree that there was no mistake in the Will that required reformation. First, the language of the Will itself manifests a testamentary scheme by which Decedent specifically devised his real estate to family members, including one residence to Mathilde, with each of Decedent's children receiving an interest in at least one parcel. Decedent left his personal property located within one home specifically to Mathilde, and the rest of it to her through the residuary clause, excepting the vehicle he devised to Diane. Decedent passed no other real estate to Mathilde through the residuary clause. Further, when he wished for devisees to share a property, he provided that directly. Thus, concluding that Decedent intended for Langston to receive the whole of the Property, rather than sharing an undefined portion of it with

Mathilde, is the interpretation of the Will that flows from placing ourselves in Decedent's armchair, and considering "the language and scheme of the instrument" as well as "the facts and circumstances with which he was surrounded" including "the condition of his family, the natural objects of his bounty and the amount and character of his property." *Estate of Cassidy*, 296 A.3d at 1223 (cleaned up).

Second, the construction of the Will suggested by Zachary and adopted by the orphans' court leads "to a result that is highly improbable" rather than "the natural intention of the testator." *Estate of McFadden*, 100 A.3d at 650 (cleaned up). Zachary advocates that Decedent's intent, as expressed in the Will, was to require his estate administrator to carve from the Property a new parcel to be assigned the address 243 Farragut Street. If that was done as Zachary suggested at oral argument, it would give Mathilde only a driveway which could not be developed because, as relayed at the outset, the garage owners have a right of way to use the driveway to access the garages.

We have crafted the following representation of the division of the Property advocated by Zachary by modifying Exhibit 4:



Finally, and most significantly, it was undisputed that Decedent owned no real estate with the address of 239-241 Farragut Street separate from real estate known as 243 Farragut Street. Rather, the Property was a single, undivided parcel that was sometimes referred to as 239-243, such as by the Philadelphia property tax office, as well as by Decedent and the prior owner in the proffered plan and permit applications, *see* Exhibits 6-8; sometimes as merely 239, as in the deeds by which Decedent acquired the Property, **see** Exhibits 1 and 2; and sometimes as just 243, as demonstrated by the Property's electric bill and the identification card Langston obtained when he lived on the Property after Decedent's death. By any of those monikers, the entirety of the Property was referenced.

Thus, the Property's identification in the Will as 239-241 instead of 239-243 was plainly the scrivener's error. **Accord Brooklyn Tr. Co. v. Warrington**, 120 A. 825, 826 (Pa. 1923) (holding that the decedent intended the devisee to receive a property the decedent owned at 1204 South Carlisle Street where the will purported to leave her real estate at "Nos. 1208, 10 and 12 S. Carlisle street" but the decedent did not own 1208); **Coleman v. Eberly**, 76 Pa. 197, 203 (1874) (holding that, where the will devised "that part of the McKinstry farm occupied and farmed by William Brown, containing eight fields," and parol evidence established that the part in question contained nine fields, the word "eight" was properly found to be a mistake).

Hence, the language of the Will, in light of the objective extrinsic evidence, clearly, precisely, and convincingly established that Decedent's intent was to devise the entirety of the Property to Langston. The finding of the orphans' court to the contrary is not supported by the evidence, and its ruling that reformation of the Will was not necessary to conform to Decedent's intent was erroneous.[5] **See Estate of Schaefer**, 300 A.3d at 1020 ("The testator's intent . . ., if it is not unlawful, must prevail."). Accordingly, the

---

[5] As the above explains, if Decedent's intent was for Langston and Mathilde to share the Property, he could have done so as he did with his joint devise of 1121 South 46th Street in equal shares to Mathilde and Nicole. Since Zachary's enumeration of items of personal property not specifically devised indicates that Mathilde will take substantial assets as residuary beneficiary, reforming the Will to reflect his intent for Langston to take the whole of the Property will not disinherit Mathilde. In any event, the purported disinheritance cited by the orphans' court does not justify its refusal to effectuate Decedent's intent.

orphans' court on remand shall reform the will to devise 239-243 Farragut Street to Langston.

As its other stated basis for denying Appellant's petition, the orphans' court suggested that Appellant is not entitled to specific performance of his sales agreement with Langston because Langston did not have full legal title to the Property at the time he entered into it. **See** Decree, 9/5/23, at n.1. This too was error.

Our legislature has provided as follows concerning legal title to the property of a decedent:

> **(a) Personal estate.**--Legal title to all personal estate of a decedent shall pass at his death to his personal representative, if any, as of the date of his death.
>
> **(b) Real estate.**--Legal title to all real estate of a decedent shall pass at his death to his heirs or devisees, subject, however, to all the powers granted to the personal representative by this title and lawfully by the will and to all orders of the court.

20 Pa.C.S. § 301. As our Supreme Court has explained:

> Although a devisee acquires legal title to specifically devised real property at the death of the testator, this title is expressly subject to the powers of the personal representative under the Probate, Estate and Fiduciaries Code [("PEF Code")] and the testamentary instrument and to all orders of the court. Thus, until distribution is made, the proper source of the full legal title of a decedent is both in the devisee and in the personal representative.

**Maier v. Henning**, 578 A.2d 1279, 1282 n.5 (Pa. 1990).

Thus, Langston obtained legal title to the Property when Decedent died. However, it had not been distributed to him at the time he agreed to sell the Property to Appellant. The position advanced by Zachary, and apparently

adopted by the orphans' court, is that Langston's shared legal title with Decedent's administrators precluded him from unilaterally entering an agreement to sell it. *See* Zachary's brief at 13. We disagree.

As neither the Will nor an order of court circumscribed Langston's exercise of the legal rights he acquired in the Property, those rights were limited only by the powers of the personal administrators included in the PEF Code. In that respect, Decedent's administrators had the following authority as to possession of the Property:

> A personal representative shall have the right to and shall take possession of, maintain and administer all the real and personal estate of the decedent, except real estate occupied at the time of death by an heir or devisee with the consent of the decedent. He shall collect the rents and income from each asset in his possession until it is sold or distributed, and, during the administration of the estate, shall have the right to maintain any action with respect to it and shall make all reasonable expenditures necessary to preserve it. . . . Nothing in this section shall affect the personal representative's power to sell real estate occupied by an heir or devisee.

20 Pa.C.S. § 3311(a).

Regarding sale of a decedent's property, the PEF Code provides as follows in pertinent part:

> [T]he personal representative may sell, at public or private sale, any personal property whether specifically bequeathed or not, and any real property not specifically devised, and with the joinder of the specific devisee real property specifically devised. When the personal representative has been required to give a bond, no proceeds of real estate, including proceeds arising by reason of involuntary conversion, shall be paid to him until the court has made an order excusing him from entering additional security or requiring additional security, and in the latter event, only after he has entered the additional security.

20 Pa.C.S. § 3351.

The import of these provisions is that Decedent's administrators had the right to possess, maintain, and administer the Property prior to its distribution to Langston, and also the right to sell it with Langston's joinder, but lacked the power to sell it without Langston's joinder. However, Zachary has not identified, and we have not found, any provision of the PEF Code that restricts the right of a specific devisee of real estate to reach an agreement to sell it pre-distribution. Indeed, an assignment of an interest in an estate is enforceable prior to the testator's death, as well as prior to the distribution of the devise. **See Biddle v. Biddle**, 70 A.2d 281, 284 (Pa. 1950). Hence, the fact that the administrators had not yet distributed the Property to Langston when he agreed to sell it to Appellant did not render the agreement unenforceable. **See In re Cowden**, 337 B.R. 512, 525 (Bankr. W.D. Pa. 2006) (acknowledging the right of a devisee under Pennsylvania law to convey his interest in an estate pre-distribution). Once the Property is distributed to Langston pursuant to our ruling herein, his agreement to sell it to Appellant is subject to enforcement.

For the above reasons, we are compelled to reverse the decree of the orphans' court denying Appellant's petition. Upon remand, the court shall direct Decedent's estate administrators to execute a deed conveying 239-243 Farragut Street to Langston and subsequently compelling Langston to perform

his agreement to sell that real estate to Appellant within a reasonable amount of time.

Decree reversed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/16/2024